# EXHIBIT B

  
  
  
 

Director Rohit Chopra
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552

August 28, 2024

**Re: Comments on 12 CFR Part 1026 [Docket No. CFPB-2024-0032] Truth in Lending (Regulation Z); Consumer Credit Offered to Borrowers in Advance of Expected Receipt of Compensation for Work**

2209 Maryland Ave · Baltimore, MD · 21218 · 410-220-0494
info@econaction.org · www.econaction.org · Tax ID 52-2266235

Economic Action Maryland is a 501(c)(3) nonprofit organization and your contributions are tax deductible to the extent allowed by law.

Dear Director Chopra,

Thank you for the opportunity to comment on the Bureau's interpretive rule on Earned Wage Access products. On behalf of Economic Action Maryland, formerly the Maryland Consumer Rights Coalition, and the nine undersigned organizations, I am writing to express strong support for the new rule. Economic Action Maryland is a people-centered movement to expand economic rights, housing justice, and community reinvestment for working families, low-income communities, and communities of color through direct services and advocacy.

**Low-Wage Workers Across Maryland Are Struggling**

In his first term, Maryland Governor Wes Moore accelerated the timetable for the state's minimum wage increase to take effect. On January 1, 2024, the minimum wage was raised to $15 an hour. While raising the minimum wage will benefit hourly workers, wages for minimum wage and working families have failed to keep pace with the cost of living.

Rent, food, utilities, and medical expenses have increased for many Marylanders. A report from the National Low Income Housing Coalition found that a minimum wage worker in Maryland would have to work 82 hours a week to afford a modest one-bedroom apartment.[1] One in two households in Prince George's County experienced food insecurity in 2023.[2] Twenty-seven percent of households in Montgomery County were food insecure last year.[3]

While employment has grown, it is still 11.4% lower than it was in January 2020 and 18.5% lower for the region's lowest earners with lags in leisure, hospitality and other service sector employment.[4] At the same time, inflation soared between May 2020-May 2023 with the Consumer Price Index rising to 19%, meaning people needed 19% more money to purchase the same goods and services as they did three years earlier. In fact, experts at MIT estimate that a family of four needs a living wage of $119,720 in Maryland.[5]

---

[1] https://www.nlihc.org/oor
[2] Capital Area Food Bank Hunger Report 2023
[3] Ibid
[4] ibid
[5] https://livingwage.mit.edu/states/24

2209 Maryland Ave · Baltimore, MD · 21218 · 410-220-0494
info@econaction.org · www.econaction.org · Tax ID 52-2266235
Economic Action Maryland is a 501(c)(3) nonprofit organization and your contributions are tax deductible to the extent allowed by law.

For the 1,356,000 Maryland hourly workers,[6] the combination of the end of pandemic government assistance, lagging employment, and inflation creates a perfect financial cataclysm for many hard-working households. This is particularly true for the 931,652 low-income individuals in the state, people who earned annual wages less than 150% of the federal poverty level, and disproportionately for Black residents who comprise 38.5% of low-income individuals in Maryland.

The interpretive rule expands important consumer protections for low-wage and hourly workers, as well as Black and Brown households.

**Earned Wage Access Products**
Given the interplay between stagnant wages and rising costs, many low-income and hourly workers have resorted to borrowing against their own paychecks because they can't cover expenses until the next payday. This is due to a mismatch between when workers are paid and when they incur expenses.

Earned Wage Advance products have emerged to provide paycheck advances prior to payday. However, many of these products are essentially fintech versions of payday loans, which have been banned in Maryland for more than 20 years.

In June and July 2024, Economic Action surveyed our members on a number of economic and consumer issues. **Of the 430 survey respondents, nearly 50% used one or more payday advance products,**[7]

The majority of Earned Wage Access products charge fees to expedite the payment. Since workers who use these products are facing a shortfall in funds, the speed with which an individual will receive the funds is a critical factor in accessing the credit. Yet, it adds to the cost of the credit and the cumulative costs of these fees add up for low-income workers. **In our survey, 89% of respondents used the expedited fee option.**[8]

---

[6] https://www.bls.gov/
[7] Economic Action Maryland supporter survey June, July 2024. Full results to be released in Fall 2024.
[8] ibid

2209 Maryland Ave · Baltimore, MD · 21218 · 410-220-0494
info@econaction.org · www.econaction.org · Tax ID 52-2266235

Economic Action Maryland is a 501(c)(3) nonprofit organization and your contributions are tax deductible to the extent allowed by law.

3

Advance wage providers also solicit borrowers for "tips", "donations", "voluntary contributions" or "gratuities". Some providers set a default tip amount that the individual must remove, suggest tip amounts or percentages, or suggest that the contribution will ensure the continuation of the pool of credit for the individual and others. Regardless of what term is used and the purported voluntary nature of the tip, these contributions along with expedite fees are a substantial source of revenue for advance wage providers. **When asked about tipping, 57% of our survey respondents said they "always or usually" tip, while another 16% percent tip about half of the time, meaning that 73% of respondents tip providers.**[9]

**Low-wage workers should not have to pay to be paid and they certainly needn't tip to access their wages.**

**CFPB Interpretive Rule**
The interpretive rule covers employer-based and direct-to-consumer earned wage access products and rightfully affirms that Earned Wage Access (EWA) products are loans and must comply with the Truth in Lending Act's (TILA) and Regulation Z.

Additionally, the interpretive rule affirms that advance wage products must comply with the Truth in Lending Act's (TILA) Annual Percentage Rate (APR) disclosures and clarifies that "tips" and expedite fees are finance charges under TILA and must be included in the costs of the loan.

**Importance of Interpretive Rule in Maryland**

Maryland has a long history and legislative record of prohibiting high-cost loans. Despite multiple efforts to take advantage of loopholes in the law, the Maryland General Assembly has repeatedly chosen to cap the interest rate chargeable on loans of $1,000 or less at 33%, effectively prohibiting payday lending in Maryland. Clarifying that Earned Wage Access products are loans will enable these products to be fully subject to Maryland's lending laws and appropriate oversight through our Office of Financial Regulation.[10]

The CFPB interpretive rule should have negligible impact on responsible EWA providers because the TILA's APR disclosures are only required if the finance

---

[9] ibid
[10] 9 See Md. Code Ann., Com. Law § 12-306(a)(6)

2209 Maryland Ave · Baltimore, MD · 21218 · 410-220-0494
info@econaction.org · www.econaction.org · Tax ID 52-2266235
Economic Action Maryland is a 501(c)(3) nonprofit organization and your contributions are tax deductible to the extent allowed by law.

charges are more than $5 on a loan that is $75 or less, or $7.50 on a loan that is more than $75. Therefore, if Earned Wage Access lenders are charging as little as they claim, this interpretative rule by the CFPB should align with their claims to provide workers with a safe and cost-effective access to their paychecks.

We thank the CFPB for authoring this critical interpretive rule that protects working families and hourly-waged employees from high-cost loans while creating greater clarity in the law and puts guardrails in place so that responsible Earned Wage Access providers can operate in the marketplace.

We urge the CFPB to finalize this interpretative rule to help Maryland and other states to appropriately regulate EWA products.
Thank you for the opportunity to submit these comments.


Best,

**Marceline White**, Executive Director, Economic Action Maryland

**Lonia Muckle**, Senior Policy Associate, CASH Campaign of Maryland

**John Kern**, Director of Programs, The SOS Fund

**Kali Schumitz**, Vice President for External Relations, Maryland Center on Economic Policy

**Ninfa Amador**, Policy Analyst, CASA

**Claudia Wilson Randall**, Executive Director, Community Development Network of Maryland

**Matthew Girardi**, Political and Communications Director, Amalgamated Transit Union (ATU) Local 689

**Mary Hunter**, Director, Housing Counseling & Services Program, Housing Initiative Partnership

**Patrick Moran**, President, AFSCME Maryland Council 3

2209 Maryland Ave · Baltimore, MD · 21218 · 410-220-0494
info@econaction.org · www.econaction.org · Tax ID 52-2266235
Economic Action Maryland is a 501(c)(3) nonprofit organization and your contributions are tax deductible to the extent allowed by law.

5

**Patty Snee**, Manager, Health Justice Campaigns, Progressive Maryland

**Vicki Schultz**, Executive Director, Maryland Legal Aid

2209 Maryland Ave · Baltimore, MD · 21218 · 410-220-0494
info@econaction.org · www.econaction.org · Tax ID 52-2266235
Economic Action Maryland is a 501(c)(3) nonprofit organization and your contributions are tax deductible to the extent allowed by law.