# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### 1:25-CV-00391-CCE-LPA

|  |  |
|---|---|
| JOSHUA STOW, SHARONE BUNN, AND TIARA LOFTON, individually and on behalf of all others similarly situated, | **ORAL ARGUMENT REQUESTED** |
| Plaintiffs, |  |
| v. |  |
| ACTIVEHOURS, INC., d/b/a EARNIN, |  |
| Defendant. |  |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EARNIN'S MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

                                                                                                    **Page**

I.     STATEMENT OF THE NATURE OF THE CASE ............................................. 1

II.    STATEMENT OF FACTS .............................................................................. 2

    A.    EarnIn's Terms of Service ................................................................ 2

    B.    Plaintiffs Repeatedly Received Notice of and Agreed to EarnIn's ToS ................................................................................................ 5

        1.    Plaintiffs Accepted the ToS When Creating Their Accounts .......... 6

        2.    Stow and Lofton Received Notice of and Agreed to the November 2023 ToS ................................................................ 8

        3.    EarnIn Notified Plaintiffs of the ToS upon Each Use of the Cash Out Product .......................................................................... 9

    C.    Arbitration Is the Proper Forum for Plaintiffs' Claims ............................. 10

III.    STATEMENT OF QUESTIONS PRESENTED ................................................. 11

IV.    LEGAL STANDARDS ................................................................................. 11

V.    ARGUMENT ............................................................................................ 12

    A.    Plaintiffs Are Bound By EarnIn's Arbitration Clause ................................ 13

        1.    EarnIn Provided Reasonably Conspicuous Notice of its ToS ......... 13

        2.    Plaintiffs Manifested Assent to the ToS at Account Creation ........ 19

        3.    Stow and Lofton Also Manifested Assent to EarnIn's November 2023 ToS ................................................................ 22

    B.    EarnIn's Arbitration Clause Encompasses Plaintiffs' Claims .................. 23

        1.    The Parties delegated authority to the arbitrator to determine whether the arbitration clause encompasses Plaintiffs' claims ....... 23

        2.    Plaintiffs' Claims Fall Within the Scope of EarnIn's Arbitration Clause ................................................................ 25

        3.    The Court Should Enforce EarnIn's Class Action Waiver ............. 27

VI.    CONCLUSION ......................................................................................... 27

# TABLE OF AUTHORITIES

**Cases**

*Am. Express Co. v. Italian Colors Restaurant,*
   570 U.S. 228 (2013) .................................................................... 11

*Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.,*
   96 F.3d 88 (4th Cir. 1996) ........................................................ 26

*AT&T Mobility LLC v. Concepcion,*
   563 U.S. 333 (2011) .................................................................... 27

*Berman v. Freedom Fin. Network, LLC,*
   30 F.4th 849 (9th Cir. 2022) ............................................... 13, 19

*Britt v. ContextLogic, Inc.,*
   2021 WL 1338553 (N.D. Cal. Apr. 9, 2021) ........................... 22

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.,*
   252 F.3d 707 (4th Cir. 2001) .................................................... 25

*Chorley Enters., Inc. v. Dickey's Barbeque Restaurants, Inc.,*
   807 F.3d 553 (4th Cir. 2015) .................................................... 12

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985) .................................................................... 11

*Dhruva v. CuriosityStream, Inc.,*
   131 F.4th 146 (4th Cir. 2025) ............................................ *passim*

*Edmundson v. Klarna, Inc.,*
   85 F.4th 695 (2d Cir. 2023) ...................................................... 12

*EEOC v. Waffle House, Inc.,*
   534 U.S. 279 (2002) .................................................................... 25

*Epic Sys. Corp. v. Lewis,*
   584 U.S. 497 (2018) .................................................................... 11

*In re Facebook Biometric Info. Priv. Litig.,*
   185 F. Supp. 3d 1155 (N.D. Cal. 2016) ................................... 23

# TABLE OF AUTHORITIES
(continued)

*Ghazizadeh v. Coursera, Inc.*,
    737 F. Supp. 3d 911 (N.D. Cal. 2024) ................................................. 12, 13, 17, 22, 23

*Granados v. Lendingtree LLC*,
    2023 WL 1481545 (W.D.N.C. Feb. 2, 2023) ............................................................ 17

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000) ........................................................................................................ 26

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    586 U.S. 63 (2019) ................................................................................................. 23, 24

*Keebaugh v. Warner Bros. Ent. Inc.*,
    100 F.4th 1005 (9th Cir. 2024) ............................................................................. 13, 18

*Lee v. DoNotPay, Inc.*,
    683 F. Supp. 3d 1062 (C.D. Cal. 2023) ...................................................................... 20

*Lee v. Ticketmaster L.L.C.*,
    2019 WL 9096442 (N.D. Cal. Apr. 1, 2019) .............................................................. 22

*Lincoln v. MX Techs., Inc.*,
    2024 WL 3274831 (E.D. Cal. July 2, 2024) ............................................................... 17

*Matera v. Google*,
    2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) .......................................................... 18

*Melo v. Zumper, Inc.*,
    439 F. Supp. 3d 683 (E.D. Va. 2020) ........................................................................ 14

*Meyer v. Uber Techs.*,
    868 F.3d 66 (2d Cir. 2017) ..................................................................... 14, 17, 20, 21

*Mod. Perfection, LLC v. Bank of Am., N.A.*,
    126 F.4th 235 (4th Cir. 2025) ............................................................................... 24, 25

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) ......................................................................................................... 11

*Moyer v. Chegg, Inc.*,
2023 WL 4771181 (N.D. Cal. July 25, 2023) ............................................................ 21

*Muriithi v. Shuttle Exp., Inc.*,
712 F.3d 173 (4th Cir. 2013) ................................................................................... 27

*Nazarova v. Duke Univ.*,
2017 WL 823578 (M.D.N.C. Mar. 2, 2017) ............................................................. 26

*Newell Rubbermaid Inc. v. Storm*,
2014 WL 1266827 (Del. Ch. Mar. 27, 2014) ........................................................... 12

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ................................................................................... 21

*Rainey v. A Place for Rover, Inc.*,
2022 WL 16942849 (C.D. Cal. July 18, 2022) .................................................. 20, 21

*Rent-A-Center, West, Inc. v. Jackson*,
561 U.S. 63 (2010) ................................................................................................... 24

*Robbins v. Mscripts, LLC*,
2023 WL 5723220 (N.D. Cal. Sept. 5, 2023) .......................................................... 22

*Sadlock v. Walt Disney Co.*,
2023 WL 4869245 (N.D. Cal. July 31, 2023) ......................................................... 22

*Sellers v. Justanswer LLC*,
73 Cal. App. 5th 444 (2021) .................................................................................... 13

*Sunbelt Residential Acquisitions, LLC v. Crowne Lake Assocs., Ltd. P'ship*,
2021 WL 512228 (M.D.N.C. Feb. 11, 2021) ...................................................... 24, 25

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
363 U.S. 574 (1960) ................................................................................................. 25

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ............................................... *passim*

North Carolina Consumer Finance Act ............................................................... 10

North Carolina Debt Collection Act ..................................................................... 10

North Carolina Unfair and Deceptive Practices Act ........................................... 11

-iii-

**Other Authorities**

Rule 12(b)(3) ................................................................................................................... 1

Case 1:25-cv-00391-CCE-LPA     Document 17     Filed 07/17/25     Page 6 of 36

Defendant Activehours, Inc., d/b/a EarnIn ("EarnIn" or "Defendant") respectfully submits this Memorandum of Law in Support of its Motion to Compel Arbitration and to stay the action under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA") and Rule 12(b)(3).

## I. STATEMENT OF THE NATURE OF THE CASE

The FAA requires courts to compel arbitration when consumers agree to a legally binding arbitration clause and their claims fall within the scope of that clause. That is the case here. Joshua Stow, Sharone Bunn, and Tiara Lofton (collectively "Plaintiffs") agreed to enforceable arbitration provisions in EarnIn's Terms of Service ("ToS"). Rather than abide by their agreements, Plaintiffs filed this case, violating the ToS's arbitration and class action waiver clauses.

Each Plaintiff received conspicuous notice of the ToS and assented to those terms (including the arbitration provision) when creating their accounts. After signing up, Plaintiffs used EarnIn many times over the years, while receiving repeated notice of the ToS. Further, the arbitration provision Plaintiffs agreed to applies to any dispute "arising out of or relating to" the ToS or Plaintiffs' use of EarnIn's "Site" and "Services." (Blackwell Decl., Ex. A-C.) This case falls within the scope of that provision, as Plaintiffs claim that EarnIn's Cash Out product, involving their use of Earnin's services, violates North Carolina consumer protection laws. The Court should compel Plaintiffs to submit their claims to arbitration and stay this case.

- 1 -

## II. STATEMENT OF FACTS

### A. EarnIn's Terms of Service

EarnIn is a financial-technology company that—for over a decade—has allowed users to access portions of their earned but unpaid wages.[1] (Compl. ¶¶ 12, 13, 16). Through its app or website, users may request "Cash Outs" ahead of payday. (*Id.* ¶ 16; Blackwell Decl., Ex. A, C). No credit check is involved; users link a bank account to receive the advance. (*See id.*) At all relevant times, EarnIn's ToS has included a mandatory arbitration provision, a class-action waiver, and a 30-day opt-out window.

**September 2021 ToS.** The preamble of the September 2021 ToS contains, in bold and all caps, a notice to users that they agree to arbitration and waive class-action rights. (Blackwell Decl., Ex. A).

Further, the arbitration clause in the September 2021 ToS is broad and includes an option for users to opt-out of arbitration. Under the section titled "Agreement to Arbitrate," the ToS states:

> You and EarnIn agree that the sole and exclusive forum and remedy for resolution of a Dispute shall be final and binding arbitration pursuant to this section entitled "Dispute Resolution by Binding Arbitration" unless you opt out as provided below.

(*Id.*)

"Dispute" is defined broadly as "any dispute, claim or controversy arising out of or relating to these Terms of Service and/or the activities or relationships that involve, lead

---

[1] *See Founder's Story*, EARNIN, https://www.earnin.com/press (last visited July 16, 2025).

to, or result from these Terms of Service." (*Id.*)  The opt-out clause allows users 30 days from acceptance to decline arbitration.  Otherwise, "you will be deemed to have knowingly and intentionally waived your right to litigate any Dispute. . ."—subject to limited exceptions.  (*Id.*)

The September 2021 ToS also contains a class-action waiver: "NO ARBITRATION SHALL PROCEED ON A CLASS, REPRESENTATIVE, OR COLLECTIVE BASIS." (*Id.*)

Under the arbitration clause, arbitration would be "administered by the American Arbitration Association ("AAA") in accordance with the Commercial Arbitration Rules and Supplemental Procedures for Consumer Related Disputes." (*Id.*)  The clause also delegated threshold issues of arbitrability to the arbitrator: "the validity or enforceability of this 'Dispute Resolution by Binding Arbitration' section, any part thereof, or the entire Terms of Service" was subject to arbitration.  (*Id.*)

EarnIn reserved the right to update its ToS and notify users of material changes: "By continuing to use our Services after any changes to the Policies become effective, you agree to abide and be bound by those changes." (*Id.*)

**April 2023 ToS.**  The April 2023 ToS echoed the September 2021 ToS's structure and language.  Like its predecessor, the arbitration clause read: "You and EarnIn agree that the sole and exclusive forum and remedy for resolution of a Claim be final and binding arbitration."  (Blackwell Decl., Ex. B.)  "Claim" was again defined broadly, and the arbitration clause delegated "enforceability and validity" to the arbitrator:

- 3 -

any past, present, or future claim, dispute, or controversy involving you . . . and us or our service provider(s) . . . relating to or arising out of this Agreement, and/or the activities or relationships that involve, lead to, or result from this Agreement, including . . . the validity or enforceability of this Arbitration Provision, any part thereof, or the entire Agreement. Claims are subject to arbitration regardless of whether they arise from contract; tort (intentional or otherwise); a constitution, statute, common law, or principles of equity; or otherwise … The scope of this Arbitration Provision is to be given the broadest possible interpretation that is enforceable.

(*Id.*)

The opt-out provision remained largely unchanged, with EarnIn informing users that they had 30 days from acceptance to decline arbitration: "If you don't provide EarnIn with an Arbitration Opt-Out Notice within the thirty (30) day period, you will be deemed to have knowingly and intentionally waived your right to litigate any Claim" with limited exceptions. (*Id.*) The class-action waiver provision also remained largely unchanged:

You, EarnIn and EarnIn's service provider(s) agree that the arbitration of any Claim shall proceed on an individual basis, and neither you, EarnIn, nor any EarnIn service provider(s) may bring a claim as a part of a class, group, collective, coordinated, consolidated or mass arbitration. (*Id.*)

The April 2023 ToS made clear that continued use "constitutes your agreement to be bound by any such changes." (*Id.*)

**November 2023 ToS.** The November 2023 ToS followed the same structure and language and continued to require individual arbitration and bar class actions:

11.    DISPUTE    RESOLUTION    BY    BINDING ARBITRATION

- 4 -

... THESE PROVISIONS REQUIRE YOU AND EARNIN TO ARBITRATE CLAIMS ON AN INDIVIDUAL BASIS . . .

**e. No Class Actions.**

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, YOU AGREE THAT YOU (I) WILL NOT BRING A CLAIM AGAINST EARNIN OR EARNIN'S SERVICE PROVIDERS AS PART OF A CLASS, GROUP, COLLECTIVE, COORDINATED, CONSOLIDATED, OR MASS ARBITRATION, AND (II) ARE NOT ENTITLED TO CONSOLIDATE, JOIN, OR COORDINATE CLAIMS BY OTHER INDIVIDUALS OR ENTITIES, OR ARBITRATE OR LITIGATE ANY CLAIM IN A REPRESENTATIVE CAPACITY.

(Blackwell Decl., Ex. C.)

The November 2023 ToS defined "Claim" similarly broadly and again included a 30-day opt-out right. (*Id.*) Unlike the earlier ToS versions, which applied California law, the November 2023 ToS designated Delaware law as the governing law. (Blackwell Decl., Exs. A–C.)

### B. Plaintiffs Repeatedly Received Notice of and Agreed to EarnIn's ToS

EarnIn provided notice of the ToS in multiple places—(i) during account creation, (ii) via email with updates to the ToS; (iii) when users selected transfer speed for Cash Outs, and (iv) at the Cash Out confirmation screen. (Altieri Decl., Exs. A–C.) When EarnIn made material updates to the ToS, EarnIn provided notice, and presented links to the ToS at each transaction. (*Id.,* Ex. C.)

As part of the EarnIn sign-up flow, when each Plaintiff created an account, they tapped a button accepting that they were agreeing to the ToS. (*Id.*, Exs. A–B.) Stow and

Lofton also agreed to the November 2023 ToS by continuing to use Cash Outs *after* receiving an email with the November 2023 ToS update. (*Id.* ¶¶ 20, 22.) And the Plaintiffs received repeated notice of EarnIn's ToS at each Cash Out—ToS that consistently explained that continued use constitutes agreement to the ToS. (Altieri Decl. ¶¶18–22, Blackwell Decl., Exs. A–C.)

### 1. Plaintiffs Accepted the ToS When Creating Their Accounts

EarnIn's records confirm that each Plaintiff agreed to the ToS upon creating accounts. Bunn signed up on February 9, 2022, and Stow on October 26, 2022, assenting to the September 2021 ToS. (Altieri Decl. ¶¶ 10, 14.) Lofton signed up on May 2, 2023, agreeing to the April 2023 ToS. (*Id.* ¶ 15, 17.)

**Bunn and Stow agreed to the September 2021 ToS.** Bunn used an Android and Stow used an iPhone when creating EarnIn accounts.[2] (*Id.* ¶10.) The sign-up flow required users to enter a phone number and stated: "by signing up, you agree to the Terms & Privacy Policy." (*Id.*, Ex. A.) The sign-up flow contained a blue hyperlink to the September 2021 ToS, with a "next" button immediately below the conspicuously hyperlinked ToS. (*Id.*) After providing their name, email, and password, users clicked "Create Account." (*Id.* ¶ 11.) That sign-up flow constituted acceptance of the ToS. (*Id.*, Ex. A; Blackwell Decl., Ex. A.)

---

[2] The sign-up process is substantially the same for iPhone and Android, with slight design differences. (Altieri Decl. ¶ 13.)



**Lofton agreed to the April 2023 ToS.** Lofton created her account on May 2, 2023 using an Android. (Altieri Decl. ¶ 15.) Below the "Create Account" button, the sign-up screen said, "By continuing, you're agreeing to receive email marketing from EarnIn. You're also agreeing to EarnIn's <u>Terms of Service</u> and <u>Privacy Policy</u>." (*Id.*) The sign-up flow contained hyperlinks to the April 2023 ToS and related agreements. (*Id.* ¶ 17; Ex. B.):





## 2. Stow and Lofton Received Notice of and Agreed to the November 2023 ToS

On November 21, 2023, EarnIn emailed users who had requested a Cash Out in the

past two years—including Plaintiffs—regarding updates to the ToS, including the

arbitration provision. (Flick Decl., Ex. A–D.) The subject line read "EarnIn Terms of Service & Cash Out Agreement Update," and the email included a hyperlink to the revised ToS effective November 23, summarized the changes to the ToS, including a reference to the arbitration section, and stated the changes would apply to future EarnIn use. (*Id.*)

After the November 2023 ToS took effect, Stow and Lofton continued using EarnIn—thereby accepting the updated ToS. (Altieri Decl. ¶¶ 20, 22.)

### 3. EarnIn Notified Plaintiffs of the ToS upon Each Use of the Cash Out Product

Starting on November 22, 2022, each time a Plaintiff continued to use EarnIn, they received notice of the ToS (hyperlink in pink) at two points: when selecting transfer speed, and again at Cash Out confirmation. (*Id.*, Ex. C.):




Since November 2022, Stow received 52 Cash Outs, Bunn received 8, and Lofton received 11— meaning they saw the ToS 104, 16, and 22 times, respectively.  (*Id.* ¶¶ 20-22; Ex. C.)

### C.    Arbitration Is the Proper Forum for Plaintiffs' Claims

Despite agreeing to arbitration and a class action waiver, Plaintiffs filed this putative class action.  (ECF No. 1 ("Compl.").)   They allege violations of the North Carolina Consumer Finance Act ("CFA"), the North Carolina Debt Collection Act ("DCA"), and

the North Carolina Unfair and Deceptive Practices Act ("UDPA"). (Compl. ¶¶ 1–5, 90–122.)

Plaintiffs seek class certification, damages, attorneys' fees, and declaratory and equitable relief. (*Id.* at 26.) EarnIn denies the allegations and asserts that the arbitration clauses in the ToS cover these claims.

## III. STATEMENT OF QUESTIONS PRESENTED

1.     Whether the Court should compel arbitration and stay the case, in light of Plaintiffs' agreement to EarnIn's ToS.

## IV. LEGAL STANDARDS

EarnIn's ToS provide that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs the interpretation and enforcement of arbitration proceedings. (*See, e.g.*, Blackwell Decl., Ex. A.) "Courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). The FAA embodies the "liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018). This reflects the FAA's directive that courts "respect and enforce the parties' chosen arbitration procedures." *Id.* "The [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Under the FAA, a court *must* compel arbitration if it finds: (1) a valid arbitration agreement exists between the parties; and (2) the dispute falls within the

scope of the agreement. *Chorley Enters., Inc. v. Dickey's Barbeque Restaurants, Inc.*, 807 F.3d 553, 563 (4th Cir. 2015).

Although the FAA is federal law, "[w]hether an agreement to arbitrate was formed is a question of ordinary state contract law principles." *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 151 n.1 (4th Cir. 2025). The ToS Plaintiffs agreed to at sign-up contains a California choice-of-law provision and the November 2023 ToS that Stow and Lofton agreed to contains a Delaware choice-of-law provision—so California or Delaware law apply. (Blackwell Decl., Exs. A–C.) To form a contract under California or Delaware law, there "must be actual or constructive notice of the agreement and the parties must manifest mutual assent."[3] *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 923 (N.D. Cal. 2024); *see Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, at *6 (Del. Ch. Mar. 27, 2014) ("The "threshold issue is . . . did the [party who assented online] have reasonable notice, either actual or constructive, of the terms of the putative agreement and . . . assent to those terms.").

## V.    ARGUMENT

Plaintiffs are prohibited from bringing this putative class action because they entered into a valid and binding agreement to arbitrate their claims and waived any right to pursue a class action.

---

[3] The Court can reference contract formation principles from either state because "traditional contract formation law does not vary meaningfully from state to state." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 702–03 (2d Cir. 2023). Because there is no conflict, the Court "need not resolve [a] choice-of-law question." *Dhruva*, 131 F.4th at 151 n.1.

**A. Plaintiffs Are Bound By EarnIn's Arbitration Clause**

EarnIn's account creation process is an enforceable "sign in wrap" agreement, requiring users to click a button and agree to a hyperlinked ToS. *See Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024) (holding that screen stating, "by Tapping 'Play,' I agree to the Terms of Service" was a "sign-in wrap agreement"). Such agreements are enforceable when they "(1) provide reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Ghazizadeh*, 737 F. Supp. 3d at 924 (quoting *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022)). Both requirements are met here.

**1. EarnIn Provided Reasonably Conspicuous Notice of its ToS**

<u>First</u>, EarnIn's sign-up flow gave users reasonably conspicuous notice of EarnIn's ToS. To determine if the ToS were reasonably conspicuous, courts have considered:

> (1) the size of the text; (2) the color of the text as compared to the background it appears against; (3) the location of the text and, specifically, its proximity to any box or button the user must click to continue use of the website; (4) the obviousness of any associated hyperlink; and (5) whether other elements on the screen clutter or otherwise obscure the textual notice.

*Sellers v. Justanswer LLC*, 73 Cal. App. 5th 444, 473 (2021). Terms are reasonably conspicuous where the notice is "'displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it.'" *Keebaugh*, 100 F.4th at 1014. "Courts consider the overall design elements of the website, including

- 13 -

font size and color, and other visual components that might hinder a user's reasonable notice." *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683 (E.D. Va. 2020).

The sign-up flow that Bunn and Stow used to create their accounts in February and October 2022 had uncluttered dark purple text against a white background. (Altieri Decl., Ex. A.) The hyperlink to the ToS was light blue and shown prominently, immediately above the "next" button that users tap to sign up for accounts. (*Id.*)



This sign-up flow provided users reasonably conspicuous notice of EarnIn's ToS. *See, e.g.*, *Meyer v. Uber Techs.*, 868 F.3d 66, 77–78 (2d Cir. 2017) (Uber app provided

- 14 -

notice where payment screen was uncluttered, hyperlinks were below registration button, and dark print contrasted with bright white background); *Dhruva*, 131 F.4th at 153 ("CuriosityStream's website 'provide[d] clear and reasonably conspicuous notice that there [were] contract terms available by scrolling down or clicking a hyperlink'—the very situation where courts generally conclude that 'the user is on reasonable notice of those terms.'").

The account sign-up flow Lofton used in May 2023 is similarly uncluttered, and states directly below the "Create Account" button, in purple text against a white background, that by "continuing," the user is agreeing to the ToS. (Altieri Decl., ¶ 15; Ex. B.) The ToS hyperlink was prominent, with underlined text, and located immediately below the "Create account" button. (*Id.*)

- 15 -



## Join over 1 million community members[1]

Almost done! Finish setting up your account with Earnin.

First name

Last name

Phone number

Email address

Create password

**CREATE ACCOUNT**

By continuing, you're agreeing to receive email marketing from Earnin. You're also agreeing to Earnin's Terms of Service and Privacy Policy.

[1]Internal analysis conducted by Earnin in January 2021, represents total users who cashed out at least once from January 1 to December 31, 2020.



That hyperlink design provides adequate notice of EarnIn's ToS.  For example, in *Dhruva,* the Fourth Circuit held defendants provided sufficient notice where the hyperlink appeared on an  "uncluttered background, close to the payment tabs that the customer ha[d] to fill out and the button that the customer ha[d] to click," and "[n]othing about the website

design or layout obscure[d] the conspicuous location of the Terms of Use hyperlink." 131 F.4th at 152. The court reasoned it is "particularly true" that a "reasonably prudent internet or smartphone user" would have been on notice where the "notice of the Terms of Service is provided simultaneously to" finalizing the transaction because doing so "connect[s] the contractual terms to the services to which they apply." *Id.*; *see also Lincoln v. MX Techs., Inc.*, 2024 WL 3274831, at *2 (E.D. Cal. July 2, 2024) (sufficient notice provided above the "get started" button, in black text against a white background, with an underlined hyperlink which "ma[de] it clear to a reasonably prudent user where the hyperlink exists"); *Granados v. Lendingtree LLC*, 2023 WL 1481545, at *3 (W.D.N.C. Feb. 2, 2023) (sufficient notice where Defendant disclosed "below the 'Create Account' tab stating that the consumer agreed to abide by the Terms of Use" in "nine-point Arial font with a hyperlink to the Terms of Use").

Second, Plaintiffs' continuing relationship with EarnIn supports they had reasonable notice of EarnIn's ToS. *See Dhruva*, 131 F.4th Cir. at 153 ("signing up for a monthly subscription service is clearly the sort of 'forward-looking relationship' that 'require[s] some terms and conditions'").

"A user engaging in a full registration process, as opposed to a one-time purchase, is more likely to expect a continuing relationship that would put her on notice for a link to the terms of that continuing relationship." *Ghazizadeh,* 737 F. Supp. at 925. For example, the Second Circuit held in *Meyer* that a customer had reasonable notice when he downloaded the Uber App, signed up for an account, entered his credit card information,

and contemplated a "forward-looking," "continuing relationship." 868 F.3d at 77–78. *See also Keebaugh*, 100 F.4th at 1020 (that users would expect continual access supported notice of arbitration agreement).

Here, as in those cases, EarnIn customers download the app and go through a registration process that contemplates a "continuing relationship." (Altieri Decl. ¶¶ 18, 20–22; Compl. ¶¶ 47–49.) Since November 2022, EarnIn shows customers the ToS twice during each Cash Out. (Altieri Decl. ¶ 18; Ex. C.) And since November 2022: (i) Stow Cashed Out 52 times and saw a link to the ToS ***104 times***, (ii) Bunn Cashed Out 8 times and saw the link 16 times, and (iii) Lofton Cashed Out 11 times, seeing the link 22 times. (Altieri Decl. ¶¶ 20–22; Ex. C.) Each version of the ToS that EarnIn presented customers during Cash Outs provided that continued use constitutes agreement to the ToS. (Blackwell Decl., Ex. B–C.)[4] Both the account sign-up flow and this extensive use establish a continual relationship where Plaintiffs had notice of the ToS, and "anticipate[d] ongoing access to [EarnIn] at the user's discretion" as opposed to a "one-and-done interaction." *See Keebaugh*, 100 F.4th at 1020; *see also Matera v. Google*, 2016 WL 5339806, at *16 (N.D. Cal. Sept. 23, 2016) (holding plaintiff agreed to privacy policy when updated terms were posted on Google's website and terms of use provided that continued use meant assent).

---

[4] Stow continued to use EarnIn through 2025, suggesting he will continue to use EarnIn, and as such, received notice of and is bound by EarnIn's current Terms.

- 18 -

### 2. Plaintiffs Manifested Assent to the ToS at Account Creation

Plaintiffs assented to the ToS because they were "explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857.

**Bunn and Stow.** For Bunn and Stow, the 2022 sign-up flow states "[b]y signing up, you agree to the Terms & Privacy Policy" with a conspicuous hyperlink to the September 2021 ToS. (Altieri Decl., ¶¶11–12.) Bunn and Stow tapped the "next" button immediately below the hyperlink to the September 2021 ToS, and another button to complete sign-up on a different screen. (*Id.*) This flow "explicitly notif[ies] [the] user of the legal significance of the action." *Berman*, 30 F.4th at 858.

*Dhruva* is instructive. 131 F.4th at 153–54. There, the sign-up screen disclosed that "by subscribing" the user agreed they "read the terms of use," which provided a hyperlink to the terms. *Id.* at 150. Further down that screen, the plaintiffs saw credit card payment fields, and a "sign up button." *Id.* The linked terms of use explained that "registering" signified assent to the terms. *Id.* The court held that because the terms of use disclosed that "registering" meant assent, it was "clear to the user" that clicking "sign up now" would "complete the registration process." *Id.* at 155 (applying California law). The court reasoned that an assent button need not "be labeled 'I accept' or 'I agree.' . . . Rather, a clear and conspicuous notice that a click will be taken as assent can do the trick." *Id.* (internal quotation omitted).

The facts here are even stronger than those in *Dhruva*. Immediately above the "next" button, EarnIn disclosed that "signing up" meant assent to the hyperlinked ToS. (Altieri Decl., ¶¶11–12.) In *Dhruva*, by contrast, the "sign up now button" was separated from the hyperlinked terms of use by credit card fields. 131 F.4th at 149–50. And, unlike here, there was no disclosure on the sign-up flow in *Dhruva* explaining the significance of registering without clicking into the terms of service. *Id.* at 153–54. Thus, the sign-up flow here is even clearer to users than the flow in *Dhruva*—which the Fourth Circuit found sufficient to manifest assent.

*Dhruva* is not an outlier. In *Meyer*, for example, the court held that users agreed to Uber's terms of service (and thus the arbitration clause) by clicking "Register," even though the "Register" button did not match language from the screen with a link to the terms, saying that customers manifest assent by "create[ing] account." 868 F.3d at 80 (applying California law). District courts applying California law have "followed the reasoning [in] *Meyer* to determine that clicking 'continue' buttons unambiguously manifested assent to terms and conditions despite a similar language mismatch from the proximate disclaimer." *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1075 (C.D. Cal. 2023) (collecting cases). For example, in *Lee*, the court compelled arbitration where customers pressed "Continue" after being shown a link to the company's terms. 683 F. Supp. 3d at 1071 (applying California law). The court found that the "continue" button "did not undermine assent" given the proximity of the button to the linked terms. *See id*; *see also Rainey v. A Place for Rover, Inc.*, 2022 WL 16942849, at *1 (C.D. Cal. July 18,

- 20 -

2022) (finding mutual assent where the disclaimer reads "By signing in or signing up" and button reads "Continue with Google" where link to terms was conspicuous).

As in *Lee*, *Rainey*, and *Meyer*, Plaintiffs manifested assent by clicking "next" on the same page with a link to the ToS with a conspicuous disclaimer that signing up manifested assent.

**Lofton.**   In the 2023 Sign-Up Screen that Lofton completed, EarnIn disclosed immediately below the "Create Account" button that "By continuing, you're agreeing to receive email marketing from EarnIn.  You're also agreeing to EarnIn's <u>Terms of Service</u> and <u>Privacy Policy</u>[,]" with hyperlinks to the April 2023 ToS and other referenced agreements.  (Altieri Decl. ¶¶ 15–17.)  Courts have routinely held that clicking a similar button unambiguously manifests assent.  *See, e.g., Moyer v. Chegg, Inc.*, 2023 WL 4771181, at *7 (N.D. Cal. July 25, 2023) (plaintiff assented to terms by "clicking the 'Create account' button when she created her Chegg account" where the terms were "located directly below" the 'Create Account' button); *Meyer*, 868 F.3d at 78–80; *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515–16 (9th Cir. 2023) (finding

- 21 -

agreement enforceable where the app stated that "[b]y continuing past this page, you agree to the Terms of Use" directly above the action button).[5]

### 3. Stow and Lofton Also Manifested Assent to EarnIn's November 2023 ToS

While Stow and Lofton assented to EarnIn's 2021 and 2023 ToS, they also assented to the November 2023 ToS, which all had arbitration clauses and provided that continued use manifested assent to updated terms. They received notice of EarnIn's updated November 2023 ToS through EarnIn's November 2023 email notifying them of the updated terms (with a blue hyperlink) and then manifested assent to the November 2023 ToS by continuing to use Cash Outs. (Flick Decl. ¶ 9; Ex. A–D; Altieri Decl. ¶¶ 20, 22.)

In *Sadlock v. Walt Disney Co.*, 2023 WL 4869245 (N.D. Cal. July 31, 2023), the court found adequate notice in similar circumstances. There, plaintiff brought claims against Disney relating to the collection of his information while he was browsing ESPN. *Id.* at *1. The court compelled arbitration because the plaintiff agreed to Disney's updated terms by (i) receiving emails with updated terms, and (ii) subsequently continuing to use Disney's services. *Id.* at *9–11, 13. That suffices to manifest assent. *Id.* at *12–13; *see*

---

[5] That some Plaintiffs created earlier accounts does not change the analysis, as later assenting to arbitration provisions is sufficient to compel arbitration. *See, e.g., Britt v. ContextLogic, Inc.,* 2021 WL 1338553, at *1, *4 (N.D. Cal. Apr. 9, 2021) (holding later created account using sign-up screen provided sufficient notice); *Robbins v. Mscripts, LLC*, 2023 WL 5723220, at *1–3 (N.D. Cal. Sept. 5, 2023) (rejecting argument that plaintiff's claims predated his assent where plaintiff had multiple sign ups); *Lee v. Ticketmaster L.L.C.*, 2019 WL 9096442, at *1 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393 (9th Cir. 2020) (rejecting argument that plaintiff could not have assented to arbitration because terms did not exist when he first bought tickets because he later assented to arbitration).

*also Ghazizadeh*, 737 F. Supp. 3d at 932–34 (plaintiff's initial consent to terms with "continued use" provision, combined with continued use, was sufficient to assent to updated terms sent via email); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (same).

The facts supporting assent here are even stronger than those in *Disney*. Stow and Lofton agreed to EarnIn's ToS when signing up for an EarnIn account. (Blackwell Decl., Exs. A–B.) But even if they had not, they agreed to the updated ToS by continuing to use EarnIn's Cash Out product *after* receiving EarnIn's November 2023 email notifying them of updated terms. (*See* Flick Decl. ¶ 9; Ex. A; Altieri Decl. ¶¶ 20, 22.) (recommending that users "review the updated terms carefully as they will apply to your use of EarnIn once the new terms are posted").

### B.    EarnIn's Arbitration Clause Encompasses Plaintiffs' Claims

EarnIn's ToS delegate arbitrability issues to the arbitrator through an express delegation provision and incorporating the AAA rules. The Court must thus compel arbitration of the gateway question of whether Plaintiffs' claims are arbitrable. Regardless, Plaintiffs' claims plainly fall within the scope of EarnIn's arbitration provision.

#### 1.    The Parties delegated authority to the arbitrator to determine whether the arbitration clause encompasses Plaintiffs' claims

Parties can expressly delegate to the arbitrator the gateway question of whether the agreement covers the dispute "so long as the parties' agreement does so by clear and unmistakable evidence." *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (internal quotations omitted). "An agreement to arbitrate a gateway issue is

simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

When parties "clear[ly] and unmistakabl[y] provide that the arbitrator shall determine what disputes the parties agreed to arbitrate, then issues of arbitrability must be determined by the Arbitrator. *Henry Schein*, 586 U.S. at 69. "[I]f there is a valid delegation clause, 'a court may not decide an arbitrability question that the parties have delegated to an arbitrator' 'even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.'" *Mod. Perfection, LLC v. Bank of Am., N.A.*, 126 F.4th 235, 241 (4th Cir. 2025).

Parties also may show "clear and unmistakable" intent to delegate arbitrability to the Arbitrator by expressly incorporating arbitration rules that vest such authority in the arbitrator, such as the Commercial Rules of the American Arbitration Association. AAA Commercial Arbitration Rules, R-7(a) (granting arbitrator authority to rule on "the arbitrability of any claim or counterclaim"); *Sunbelt Residential Acquisitions, LLC v. Crowne Lake Assocs., Ltd. P'ship*, 2021 WL 512228, at *5–7 (M.D.N.C. Feb. 11, 2021) ("[I]n light of the Agreement's incorporation of the AAA Rules, questions of arbitrability properly fall to the arbitrator").

Here, the parties "clearly and unmistakably" delegated arbitrability to the arbitrator. The ToS include an express delegation clause stating that any questions about "the validity or enforceability" of the agreement will be submitted to the arbitrator. (Blackwell Decl.,

- 24 -

Exs. A, C.)  "The Supreme Court and [the Fourth Circuit] have treated similarly worded provisions as delegation clauses." *Mod. Perfection,* 126 F.4th at 242 (collecting cases with language including "all disputes including the scope and validity of this Agreement" or "the interpretation, applicability, enforceability or formation of this agreement").  The ToS also incorporate the AAA rules: "The arbitration will be administered by [AAA] in accordance with the Commercial Arbitration Rules . . . then in effect."  (Blackwell Decl., Exs. A, C).  By incorporating the AAA rules and employing a delegation clause, the parties "clearly and unmistakably" delegated arbitrability to the arbitrator.  *Sunbelt Residential,* 2021 WL 512228, at *5–7.

### 2. Plaintiffs' Claims Fall Within the Scope of EarnIn's Arbitration Clause

Alternatively, even if the Court considers arbitrability, the Court should compel arbitration because Plaintiffs' claims fall within the scope of the arbitration clause in EarnIn's ToS.[6]  "[A]bsent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).  Courts must conclude disputes are covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S.

---

[6] To the extent the Court finds any claims non-arbitrable, it should stay them while the underlying facts are determined in arbitration. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 712 (4th Cir. 2001).

- 25 -

574, 582–583 (1960). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

Here, there is no ambiguity in EarnIn's TOS. Plaintiffs' claims fall within EarnIn's arbitration clause, which defines "Disputes" submitted to arbitration as those "***arising out of or relating to*** these Terms of Service and/or the activities or relationships that involve, lead to, or result from these Terms of Service." (Blackwell Decl., Ex. A (emphasis added); Ex. C).[7]

Courts regularly characterize the phrase "arising out of or relating to" as broad in scope, covering both contractual and tort claims. *See, e.g.*, *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996) (finding language requiring arbitration of any dispute "that arose out of or related to" an agreement broad and inclusive of all disputes "having a significant relationship" to the agreement, including tort claims); *Nazarova v. Duke Univ.*, 2017 WL 823578, at *6 (M.D.N.C. Mar. 2, 2017) ("The Fourth Circuit has consistently held that an arbitration clause encompassing all disputes arising out of or relating to a contract embraces every dispute between the parties having a significant relationship to the contract regardless of the label.").

---

[7] The November 2023 ToS similarly defines "Claims" subject to arbitration as "any past, present, or future claim or dispute between you and EarnIn . . . that relates to, or arises out of, this Agreement, or the activities or relationships that involve, lead to or result from this Agreement…" (Blackwell Decl., Ex. C, § 11.)

Plaintiffs' allegations "arise out of" and "relate to" EarnIn's ToS, which govern the use of EarnIn's "Site" and "Services." EarnIn's "Site" and "Services," which include "all websites, devices, and/or applications we operate that link to these Terms of Services" and "EarnIn's products, services, and features available to you through one or more Sites." (Blackwell Decl. Ex. A.)  Plaintiffs' claims plainly relate to their use of EarnIn's "Site" and "Services," and "products, service, and features," as they allege that "EarnIn sold Plaintiffs cash advances . . . and Plaintiffs paid lightning speed fees to obtain those advances."  (Compl. ¶¶ 4, 55; Blackwell Decl., Ex. A).  There is no doubt that Plaintiffs' claims fall squarely within the scope of the arbitration provision.  Accordingly, the Court should compel Plaintiffs to arbitrate their claims.

### 3.  The Court Should Enforce EarnIn's Class Action Waiver

Not only are Plaintiffs barred from litigating in Court, but EarnIn's class action waiver bars Plaintiffs from bringing a class action.  (Blackwell Decl., Ex. A; Ex. C, § 11e.) The FAA permits enforcement of class action waivers, and courts routinely enforce such provisions.  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344, 352 (2011) (concluding the FAA permits class action waivers); *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 180–81 (4th Cir. 2013) (upholding class action waiver).

## VI.  CONCLUSION

The Court should compel Plaintiffs to arbitrate their claims and stay the case pending arbitration.

- 27 -

This the 17th day of July, 2025.

*/s/ Stephen V. Carey*
Stephen V. Carey (NC Bar No. 52791)
Cristina C. Stam (NC Bar No. 51009)
Aislinn R. Klos (NC Bar No. 58309)
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 1400
Raleigh, N.C. 27601
Tel.: (919) 828-0564 | Fax: (919) 864-4564
stevecarey@parkerpoe.com
cristinastam@parkerpoe.com
aislinnklos@parkerpoe.com

Michael N. Sheetz (Special Appearance)
Allison C. Sherwood (Special Appearance)
Massachusetts Bar No. 716201
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
(617) 937-2300 | Fax: (617) 937-2400
msheetz@cooley.com
asherwood@cooley.com

*Attorneys for Defendant ACTIVEHOURS, INC.,
d/b/a EARNIN*

- 28 -

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), the undersigned hereby certifies that this brief contains no more than 6,250 words, as calculated by the word count feature of Microsoft Word, Office 365 ProPlus.

*/s/ Stephen V. Carey*
Stephen V. Carey

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was electronically filed with the Clerk of the Court by using the CM/ECF System which will automatically send notice to all counsel of record

This the 17th day of July, 2025.

/s/ Stephen V. Carey
Stephen V. Carey

- 30 -