**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**No. 1:25-cv-00391-CCE-LPA**

JOSHUA STOW, SHARONE BUNN,
AND TIARA LOFTON, individually and
on behalf of all others similarly situated,

      Plaintiffs,

v.

ACTIVEHOURS, INC. d/b/a EARNIN,

      Defendant.

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

RELEVANT BACKGROUND .................................................................... 2

ARGUMENT ............................................................................................. 2

I.  Plaintiffs Did Not Agree To Arbitrate Their Claims ............................... 2

    A.  Lofton did not receive conspicuous notice of the April 2023 ToS
        when she signed up for EarnIn's app ............................................ 3

    B.  Bunn and Stow did not unambiguously manifest assent to the
        September 2021 ToS by signing up for EarnIn's app ................... 8

        1.  EarnIn failed to explicitly advise Bunn or Stow that
            clicking "Next" would bind them to terms ...................... 9

        2.  EarnIn's cases do not establish an unambiguous
            manifestation of assent on part of Bunn or Stow ........... 12

    C.  Plaintiffs did not assent to any terms by obtaining cash advances
        or receiving emails ...................................................................... 14

II.  Lofton's April 2023 ToS Is Unconscionable ....................................... 16

III.  The Arbitration Agreements Should Not Be Enforced Because
      Plaintiff's Did Not Knowingly Waive Their Jury Trial Rights ............ 18

IV.  Plaintiff's Formation and Unconscionability Challenges Are for the
      Court to Resolve Irrespective of Any Delegation Clause ................... 20

V.  The Class Action Waiver Should Not Be Enforced ............................. 21

CONCLUSION ........................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Abex Corp. v. Md. Cas. Co.*,
   790 F.2d 119 (D.C. Cir. 1986) ................................................................... 11

*Adams v. Aerojet-Gen. Corp.*,
   86 Cal. App. 4th 1324 (2001) ................................................................... 17

*Aetna Ins. Co. v. Kennedy*,
   301 U.S. 389 (1937) ................................................................... 18

*Berman v. Freedom Fin. Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) ................................................................... 3, 5, 8, 10

*Chabolla v. Classpass Inc.*,
   129 F.4th 1147 (9th Cir. 2025) ................................................................... *passim*

*Dhruva v. Curiotsitystream, Inc.*,
   131 F.4th 146 (4th Cir. 2025) ................................................................... 6, 12

*Edmundson v. Klarna, Inc.*,
   85 F.4th 695 (2d Cir. 2023) ................................................................... 11

*Franklin v. Dave, Inc.*, No. 24-cv-00687,
   2024 U.S. Dist. LEXIS 222844 (D. Md. Dec. 10, 2024) ................................................................... 14

*Gibbs v. Haynes Invs., LLC*,
   967 F.3d 332 (4th Cir. 2020) ................................................................... 21

*Godun v. JustAnswer LLC*,
   135 F.4th 699 (9th Cir. 2025) ................................................................... 8, 11

*Golubiewski v. Activehours, Inc.*, No. 22-cv-02078,
   2025 U.S. Dist. LEXIS 167308 (M.D. Pa. Aug. 28, 2025) ................................................................... 1

*Granite Rock Co. v. Int'l Brotherhood of Teamsters*,
   561 U.S. 287 (2010) ................................................................... 20

*Hayes v. Delbert Servs. Corp.*,
   811 F.3d 666 (4th Cir. 2016) ................................................................... 18

Case 1:25-cv-00391-CCE-LPA     Document 22     Filed 09/08/25     Page 3 of 29

*Heckman v. Live Nation Ent., Inc.*,
120 F.4th 670 (9th Cir. 2024) ....................................................... 16, 17, 18

*Ireland-Gordy v. Tile, Inc.*,
760 F. Supp. 3d 946 (N.D. Cal. 2024) ....................................................... 15

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ....................................................... 7

*Johnson v. Activehours, Inc.*, No. 24-cv-02283,
2025 U.S. Dist. LEXIS 152809 (D. Md. Aug. 8, 2025) ............................................. 1

*Johnson v. Cont'l Fin. Co., LLC*,
131 F.4th 169 (4th Cir. 2025) ....................................................... 20

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................................................... 7

*Lail v. Tuck*,
908 S.E.2d 842 (N.C. App. 2024) ....................................................... 16

*Leasing Serv. Corp. v. Crane*,
804 F.2d 828 (4th Cir. 1986) ....................................................... 18

*Lee v. DoNotPay, Inc.*,
683 F. Supp. 3d 1062 (C.D. Cal. 2023) ....................................................... 12

*Lopez v. Dave, Inc.*, No. 22-16915,
2023 U.S. App. LEXIS 32736 (9th Cir. Dec. 12, 2023) ............................................. 14

*MacClelland v. Cellco P'ship*,
609 F. Supp. 3d 1024 (N.D. Cal. 2022) ....................................................... 17, 18

*MacDonald v. CashCall, Inc.*,
883 F.3d 220 (3d Cir. 2018) ....................................................... 21

*Marshall v. Georgetown Mem'l Hosp.*,
112 F.4th 211 (4th Cir. 2024) ....................................................... 13, 19

*Meyer v. Uber Techs., Inc.*,
868 F.3d 66 (2d Cir. 2017) ....................................................... 6, 7, 11, 12

iii

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1178 (9th Cir. 2014) ..................................................................... 7

*Oberstein v. Live Nation Ent., Inc.*,
    60 F.4th 505 (9th Cir. 2023) ..................................................................... 3

*Orubo v. Activehours, Inc.*,
    780 F. Supp. 3d 927 (N.D. Cal. Apr. 30, 2025) ........................................... 1

*Pandolfi v. Aviagames, Inc.*, No. 23-cv-05971,
    2024 U.S. Dist. LEXIS 159007 (N.D. Cal. Sept. 4, 2024) ........................ 18

*Rainey v. A Place for Rover, Inc.*, No. 22-cv-00403,
    2022 U.S. Dist. LEXIS 208799 (C.D. Cal. July 18, 2023) ....................... 12

*Rigano v. Uber Tech., Inc.*, 218 N.Y.S.3d 799,
    2024 U.S. N.Y. Misc. LEXIS 835 (N.Y. Sup. Ct. Oct. 15, 2024) ............. 19

*Sadlock v. Walt Disney Co.*, No. 22-cv-09155,
    2023 U.S. Dist. LEXIS 132295 (N.D. Cal. July 31, 2023) ....................... 15

*Sellers v. JustAnswer LLC*,
    73 Cal. App. 5th 444 (2021) ................................................................. 5, 6

*Sifuentes v. Dropbox, Inc.*, No. 20-cv-07908,
    2022 U.S. Dist. LEXIS 125273 (N.D. Cal. June 29, 2022) ...................... 15

*Simler v. Conner*,
    372 U.S. 221 (1963) ............................................................................. 18, 19

*Specht v. Netscape Communs. Corp.*,
    306 F.3d 17 (2d Cir. 2022) .................................................................. 3, 13

*Starke v. Squaretrade, Inc.*,
    913 F.3d 279 (2d Cir. 2019) .................................................................... 13

*Sydnor v. Conseco Fin. Servicing Corp.*,
    252 F.3d 302 (4th Cir. 2016) ................................................................... 19

*Tempest v. Safeway, Inc.*, No. 24-cv-06553,
    2025 U.S. Dist. LEXIS 135949 (N.D. Cal. July 16, 2025) ....................... 15

iv

*Wollen v. Gulf Stream Restoration & Cleaning, LLC*,
 259 A.3d 867 (N.J. Sup. Ct. 2021) .............................................................. 19

**Rules**

Cal. R.C.P. 5.6 ............................................................................................... 17

**Other Authorities**

*Granados v. Lendingtree LLC*, No. 22-cv-00504,
 ECF 13-1 (W.D.N.C. Dec. 20, 2022) ............................................................ 6

*Lincoln v. MC Techs., Inc.*, No. 23-cv-00806,
 ECF 26-2 (E.D. Cal. Sept. 1, 2023) .............................................................. 6

## INTRODUCTION

Defendant Activehours, Inc. ("EarnIn") offers payday loans through a mobile app to North Carolina borrowers. EarnIn charges fees for these loans that result in an average APR of 284%. These fees make it difficult for borrowers to pay their bills, often trap them in reborrowing cycles, and harm their financial health. Plaintiffs claim EarnIn's advances are unlawful under North Carolina law. Notably, at least three other courts have—just this year—found similar claims that EarnIn's advances are illegal under comparable state laws to be well-pleaded. *See Orubo v. Activehours, Inc.*, 780 F. Supp. 3d 927 (N.D. Cal. Apr. 30, 2025); *Johnson v. Activehours, Inc.*, No. 24-cv-02283, 2025 U.S. Dist. LEXIS 152809 (D. Md. Aug. 8, 2025); *Golubiewski v. Activehours, Inc.*, No. 22-cv-02078, 2025 U.S. Dist. LEXIS 167308 (M.D. Pa. Aug. 28, 2025).

Plaintiffs filed this action to recover the unlawful charges they and other borrowers paid, but EarnIn seeks to prevent them from doing so by forcing Plaintiffs to arbitrate their claims. EarnIn seeks to compel arbitration based on terms that were hyperlinked on screens in its mobile app, on its website, and in emails sent to Plaintiffs.

Whether these hyperlinks pass muster is answered by the Ninth Circuit's February 2025 decision in *Chabolla v. Classpass Inc.*, 129 F.4th 1147 (9th Cir. 2025), *rehr'g en banc denied*, 2025 U.S. App. LEXIS 11452 (9th Cir. May 12, 2025). There, the Ninth Circuit found hyperlinks substantially similar to EarnIn's to be unenforceable under California law. Like the panel in *Chabolla*, the Court should find Plaintiffs never agreed to arbitrate, and should deny EarnIn's request to force Plaintiffs to do so.

1

## RELEVANT BACKGROUND

EarnIn moves to compel arbitration against each Plaintiff based on its Terms of Service ("ToS"). At issue are three versions of the ToS with the following effective dates: September 2021 (Blackwell Decl. Ex. A, ECF 18-1); April 2023 (Ex. B, ECF 18-2); and November 2023 (Ex. C, ECF 18-3).

EarnIn claims that Bunn and Stow agreed to the September 2021 ToS by signing up for EarnIn's app, that Lofton agreed to the April 2023 ToS by signing up for EarnIn's app, and that Stow and Lofton agreed to the November 2023 ToS by continuing to use EarnIn's app and by receiving an email. As explained below, these actions did not manifest assent to the ToS, which means Plaintiffs never agreed to arbitrate.

## ARGUMENT

### I. Plaintiffs Did Not Agree To Arbitrate Their Claims.

Under California law,[1] a party seeking to establish formation of an online agreement must show a consumer: (1) was given "reasonably conspicuous notice" of the terms; and (2) "unambiguously manifested [their] assent to those terms." *Chabolla*, 129 F.4th at 1154–55 (internal marks omitted). As explained below, EarnIn fails this test for each Plaintiff. Accordingly, Plaintiffs did not agree to arbitrate by signing up for EarnIn's app, using the app to obtain advances, or receiving an email from EarnIn.

---

[1] EarnIn concedes California contract law applies and relies extensively on cases applying California law. (*See* ECF 17, p. 18 (contending "California or Delaware law apply" and "there is no conflict" between the states' law).)

2

## A. Lofton did not receive conspicuous notice of the April 2023 ToS when she signed up for EarnIn's app.

EarnIn contends Lofton agreed to its April 2023 ToS when she clicked a "CREATE ACCOUNT" button on a website when signing up for EarnIn's app. EarnIn claims Lofton had reasonable notice that this click would bind her to the April 2023 ToS because EarnIn put a hyperlink to those terms, and small-font text saying Lofton was agreeing to the terms, below the "CREATE ACCOUNT" button. (ECF 17, pp. 27–28.)[2]

In analyzing whether Lofton's screen provided reasonable notice of the April 2023 ToS—such that Lofton should have known her click of the "CREATE ACCOUNT" button would bind her to terms—the Court must ask if the notice was "displayed in a font size and format such that the [C]ourt can fairly assume that a reasonably prudent Internet user would have seen it." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (citing *Specht v. Netscape Communs. Corp.*, 306 F.3d 17, 30 (2d Cir. 2022)). If the notice was not displayed in this manner, then any action Lofton took on the relevant screen was insufficient to "unambiguously manifest" assent to EarnIn's terms. *See Chabolla*, 129 F.4th at 1158 ("Given that screen 1 fails to provide reasonably conspicuous notice . . . , any action the user takes on the page cannot unambiguously manifest assent[.]" (citing *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023))).

---

[2] Citations to "(ECF X, p. X)" herein refer to the blue document and page numbers that are placed at the bottom of documents filed through the Court's CM/ECF system.

In *Chabolla*, the Ninth Circuit reviewed a three-screen purchase flow, and found the first screen failed to provide reasonable notice of the defendant's terms:



*Chabolla,* 129 F.4th 1147 at App'x (Screen 1).

The above screen was insufficient for three reasons: distance, font, and clutter. On distance, the hyperlinked terms were too "distan[t] from relevant action items" (like the "Continue" button), placing them "outside of the user's natural flow." *Id.* at 1157. On font, the notice text was "notably timid in both size and color," despite the blue hyperlink. *Id.* And, on clutter, the notice was undermined by the "crowded" nature of the screen, which included several "images of people exercising." *Id. Chabolla* concluded that because this screen failed to provide adequate notice, "any action the user takes on the page cannot unambiguously manifest assent." *Id.* at 1158.

4

Lofton's screen (on the right) suffers from the same defects. On distance, the ToS appear below the "CREATE ACCOUNT" button Lofton clicked, after an unrelated fine print disclosure, outside a user's natural flow. On font, the ToS link is in the smallest font on the screen, sandwiched between two fine print sentences, and in the same color as the surrounding text. And while the link is underlined, this single feature does not make the link stand out given the small, light font used in the link, which is the same as the surrounding text. *See Berman*, 30 F.4th at 857 ("Simply underscoring words . . . will often be insufficient to alert [a user] that a clickable link exists."); *Sellers v. Just Answer LLC*, 73 Cal. App. 5th 444, 479 (2021) (notice not conspicuous where linked terms were same color as surrounding text). On clutter, the screen includes a bolded banner at the top, a large "CREATE ACCOUNT" button in the middle, and a large, colorful image of people at the



Lofton's Screen (Altieri Decl. Ex. B, ECF 19-2).

bottom. The banner at the top also has a footnote indicator, which should negate notice alone, as a reasonable user would assume the fine print at the bottom is the inconsequential footnote (not a link to a binding contract). Consequently, the screen on the right fails to give reasonable notice.

5

The authorities EarnIn cites in support of its contrary argument are not on point, as they dealt with notices that either were within the action area where a user's attention was directed, or included a design element (like contrasting or large print font) sufficient to draw a user's attention outside that area and signal the existence of a hyperlink. *See Dhruva v. Curiositystream, Inc.*, 131 F.4th 146, 150 (4th Cir. 2025) (notice placed above action button and hyperlink appeared in bright yellow font, which contrasted with other white text on screen); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 81 (2d Cir. 2017) (notice placed below action button, but hyperlink capitalized and appeared in bright blue font, which contrasted with other text, all of which appeared in another color); Decl. re: Opp'n to Mot., *Granados v. Lendingtree LLC*, No. 22-cv-00504, ECF 13-1, p. 5 (W.D.N.C. Dec. 20, 2022) (notice placed below action button, but hyperlink in bright blue font, which contrasted with all text other than the button, which also appeared in bright blue); Mot. to Change Venue, *Lincoln v. MX Techs., Inc.*, No. 23-cv-00806, ECF 26-2, p. 2 (E.D. Cal. Sept. 1, 2023) (notice placed below action button, but notice was only eleven words in length, and was displayed in font as large as or larger than other font on screen).

Reviewing the screens in EarnIn's cases only illustrates the problems with Lofton's screen. Unlike the contrasting or large print font used in those cases, nothing draws a user's attention to EarnIn's non-contrasting, tiny-print terms, buried in a block of non-contrasting text in a footnote. *See Sellers*, 73 Cal. App. 5th at 479 (notice lacking where terms placed at "very bottom of the screen, in smaller text than anything else on the page" in a hyperlink that was "not in contrasting type, font, or color" (internal marks omitted)).

6

Nor can EarnIn's notice deficiencies be cured by a "continuing relationship" context that may put users on notice of terms. (ECF 17, p. 23.) The transactional context is a factor in evaluating notice, but it is not dispositive. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1019 (9th Cir. 2024). Indeed, *Chabolla* found notice insufficient despite recognizing that the transactions at issue (gym subscriptions) provided users with "some indication of a continuing relationship." 129 F.4th at 1156. And while creating an account may reflect a continuing relationship, the lack of any financial or payment information needed to create an EarnIn account cuts against the notion that users would be looking for terms at sign-up. *Cf. Meyer*, 868 F.3d at 81 (sign-up page required credit card payment information). At best, the context of Lofton's sign-up process "neither weighs in favor of nor against the notice requirement." *Chabolla*, 129 F.4th at 1156.

Finally, even assuming the screen Lofton saw provided reasonable notice, given the screen's elongated orientation and the fact that EarnIn has not provided the pixel height, it is plausible Lofton needed to scroll down the webpage to reveal the ToS link, and clicked the "CREATE ACCOUNT" button without ever seeing the TOS link. EarnIn has the burden to prove the ToS link would have been shown to Lofton. *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1100 (9th Cir. 2023) ("The burden is on the party seeking arbitration to show notice and assent."). Because there is no evidence to prove that fact, EarnIn's motion should be denied for this additional reason. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1178, 1177 (9th Cir. 2014) (courts refuse to enforce alleged online contracts when "the link to a website's terms of use is buried at the bottom of the page").

**B.     Bunn and Stow did not unambiguously manifest assent to the September 2021 ToS by signing up for EarnIn's app.**

EarnIn contends that Bunn and Stow agreed to its September 2021 ToS when they clicked a "Next" button on the first screen of a five-screen sign-up flow that was presented to them when they were signing up for EarnIn's app. EarnIn claims Bunn and Stow's click of the "Next" button on the first screen unambiguously manifested assent to the September 2021 ToS because: (1) the following statement appeared above the "Next" button: "By signing up, you agree to the Terms & Privacy Policy"; and (2) the word "Terms" was linked to EarnIn's September 2021 ToS. (ECF 17, p. 27 ("Plaintiffs manifested assent by clicking 'next' on the same page with a link to the ToS with a conspicuous disclaimer that signing up manifested assent.")).

To prove Bunn and Stow's click of "Next" unambiguously manifested assent to the September 2021 ToS, EarnIn must prove it explicitly notified Bunn and Stow that clicking the button would bind them to the terms. *See Chabolla*, 129 F.4th at 1158 ("A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement. The notice must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." (quoting *Berman*, 30 F.4th at 857–58) (alterations omitted)). Determining whether a specific click proves unambiguous manifestation of assent to specific terms "does not [concern] the context of the transaction but relies on the explicit advisement of what actions will be taken to signify assent." *Godun v. JustAnswer LLC*, 135 F.4th 699, 713 (9th Cir. 2025).

8

### 1. EarnIn failed to explicitly advise Bunn or Stow that clicking "Next" would bind them to terms.

Similar to Lofton's sign-up screen, *Chabolla* demonstrates that the five-screen sign-up flow displayed to Bunn and Stow was insufficient to bind them to the September 2021 ToS. In *Chabolla*, the Ninth Circuit reviewed the following three-screen sign-up flow, and held that none of the screens could establish that the plaintiffs unambiguously manifested assent to the defendant's terms:



*Chabolla*, 129 F.4th 1147 at App'x (portions of purchase flow relevant to assent excerpted).

As set out above, Screen 1 failed on notice grounds, obviating assent. *Chabolla*, 129 F.4th at 1158. Screens 2 and 3 failed on assent grounds due to a mismatch between the advisals ("By signing up you agree to our Terms," and "I agree to the Terms") and action buttons ("Continue," and "Redeem now"), which failed to "indicate . . . what action would constitute assent.'" *Id.* at 1158–59 (internal marks omitted). And because each screen failed on its own, they failed together. *Id.* at 1159 ("[T]hree faulty notices do not equal a proper one.").

9

Bunn and Stow's five-screen sign-up flow is even more ambiguous and offers even less instruction than the sign-up flow in *Chabolla*:



Bunn & Stow's Screens. (Altieri Decl. Ex. A, ECF 19-1.)

To start, Bunn and Stow were advised on the first screen that they could agree to EarnIn's terms "By <u>signing up</u>," but they were asked to click "NEXT," which did not allow them to "sign up." This mirrors *Chabolla*'s Screen 2, where a nearly identical advisal ("By signing up you agree to our Terms") could not establish assent by clicking a nearly identical button ("Continue"). 129 F.4th at 1158. As such, neither Bunn nor Stow could have known clicking "NEXT" would bind them to terms. And, worse than *Chabolla*, EarnIn never again mentioned its terms on any of the remaining screens in the sign-up flow. As such, inputting a phone number on Screen B, clicking "NEXT" on Screens C and D, or clicking "CREATE ACCOUNT" on Screen E of Bunn or Stow's sign-up flow could not have established assent to any terms either. *See Berman*, 30 F.4th at 858 ("[E]ven close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." (internal marks omitted)).

10

The Ninth Circuit drove the point home two months later when it decided *Godun*. Applying California law, the Ninth Circuit reiterated that mismatched language can negate assent, finding a notice stating "I agree to the Terms"—accompanied with a checked box, no less—and a "Connect now" button did not establish assent, because there was no "explanatory phrase indicating that 'By clicking connect now' . . . [the user] agreed to the terms." *Godun*, 135 F.4th at 712–13. That defect is repeated in EarnIn's sign-up flow, which never explains what action users must take to "sign up" and agree to the ToS. The belated "CREATE ACCOUNT" button cannot resolve this issue, as it appears four screens after EarnIn's initial advisal that users can agree to the ToS by "signing up." By then, reasonable users would have forgotten the advisal. And even if they recalled it, they could not review the terms, because the link passed, which is why advisals are effective only when they are placed in "spatial and temporal proximity . . . to the mechanism for manifesting assent." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 707 (2d Cir. 2023); *Meyer*, 868 F.3d at 79–80 (same). EarnIn's failure in this regard is dispositive.

As *Chabolla* observes, the defect in this case "could easily have been remedied by including language such as, 'By clicking the "[Next]" button, you agree to the Terms.'" 129 F.4th at 1159. Since EarnIn's sign-up flow lacks such unambiguous language, it cannot establish assent under *Chabolla*'s interpretation of California law. *Id.*; *see also Abex Corp. v. Md. Cas. Co.*, 790 F.2d 119, 125 (D.C. Cir. 1986) ("[I]t is fair to assume that the circuit with jurisdiction over the state whose law is in question will inevitably have a better sense of the applicable state law than that of our own.").

11

### 2. EarnIn's cases do not establish an unambiguous manifestation of assent on part of Bunn or Stow.

The ambiguity created by EarnIn's <u>multiscreen</u> sign-up flow cannot be saved by its authorities, all of which are distinguishable because they examined a <u>single-screen</u> where advisals appeared in direct proximity to buttons explicitly informing users that clicking the buttons constituted assent to terms.[3]

Moreover, the only binding case EarnIn cites—*Dhruva*—fails to help, and supports finding a lack of notice. *Dhruva* considered the following advisal, "By subscribing . . . you agree that you've read our Terms," which was placed above a "Sign up now" button, both of which were placed on a single screen that asked for payment information to finalize the purchase of a video subscription service. 131 F.4th at 150. Although the advisal and button were mismatched, the "Sign up now" button allowed the plaintiff to "subscribe"—the action to manifest assent—and the advisal and button were provided "simultaneously to finalizing [a] transaction." *Id.* at 152–53 (internal marks omitted). Given these factors, the plaintiff could reasonably understand that clicking "Sign up now" would constitute "subscribing" and therefore bind him to the terms hyperlinked on the screen.

---

[3] *E.g.*, *Dhruva*, 131 F.4th at 150 (single screen where advisal stating "By subscribing . . . you agree that you've read our Terms" placed above "Sign up now" button); *Meyer*, 868 F.3d at 81 (single screen where advisal stating "By creating an Uber account, you agree to the Terms" placed below "Register" button); *Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1067, 1075 (C.D. Cal. 2023) (single screen for page titled "Sign in or Sign up" where advisal stating "By signing up . . . you are agreeing to [defendant's] Terms" placed below "Continue" button); *Rainey v. A Place for Rover, Inc.*, No. 22-cv-00403, 2022 U.S. Dist. LEXIS 208799, at *2 (C.D. Cal. July 18, 2022) (single screen where advisal stating "By signing in or signing up, I agree to [defendant's] Terms" placed below signup button).

The factors *Dhruva* found dispositive are absent here. First, the button EarnIn argues that Plaintiffs clicked to manifest assent ("NEXT") did not allow them to complete the action that EarnIn advised would manifest assent ("signing up"). Given that, Plaintiffs could not have known that clicking "NEXT" would bind them to any terms, or would do anything other than allow them to move through EarnIn's five-screen sign-up flow. Second, the only button allowing Plaintiffs to engage in the act that EarnIn advised could bind Plaintiffs to terms ("signing up")—the "CREATE ACCOUNT" button—appeared four screens after the notice of and hyperlink to EarnIn's ToS. And the screen with that button included no notice of or hyperlink to any terms, or even a mention of their existence, making it impossible for Plaintiffs to understand that clicking the button would manifest assent to any terms.

More fundamentally, Plaintiffs were not obligated to "go exploring" for hyperlinks or "'ferret out'" advisals to guess what buttons could potentially bind them to a contract. *Marshall v. Georgetown Mem'l Hosp.*, 112 F.4th 211, 220 (4th Cir. 2024) (citing *Specht*, 306 F.3d at 32; quoting *Starke v. Squaretrade, Inc.*, 913 F.3d 279, 295 (2d Cir. 2019)). That is especially true when terms are presented at the early stages of a transaction, where users are not expecting them—like when users input phone numbers at the start of a sign-up process (such as in this case)—rather than at the end of a transaction, where users would reasonably expect to agree to terms—like when users finalize a purchase or subscribe to a service (like in *Dhruva*). For these reasons, neither Bunn nor Stow unambiguously assented to arbitrate by signing up for EarnIn's app.

13

**C.**   **Plaintiffs did not assent to any terms by obtaining cash advances or receiving emails.**

EarnIn argues that Plaintiffs assented to terms for every cash advance they obtained post-2023 because an in-app screen referenced "EarnIn.com/TOS," which linked to various versions of the ToS. (ECF 17, pp. 24, 28–29; *see also* ECF 19, ¶ 19.)

The Court should reject this argument for a few reasons. First, "EarnIn.com/TOS" does not clearly reference contractual terms or make clear an offer of terms is being made. *See Lopez. v. Dave, Inc.*, No. 22-16915, 2023 U.S. App. LEXIS 32736, at *3 (9th Cir. Dec. 12, 2023) ("TOS" unclear); *Franklin v. Dave, Inc.*, No. 24-cv-00687, 2024 U.S. Dist. LEXIS 222844, at *12 (D. Md. Dec. 10, 2024) (same). Second, the screens do not inform users they are agreeing to the "EarnIn.com/TOS" hyperlink by clicking buttons or engaging in any other conduct. Third, the screens introduce ambiguity because the only instruction provided is that clicking a button manifests assent to a "Lightning Speed Authorization Agreement"—which does not contain an arbitration clause. (ECF 19, ¶ 19 ("Restrictions and/or third party fees may apply, see <u>Earnin.com/TOS</u> for details. By cashing out, you agree to the <u>Lightning Speed Authorization Agreement</u>.").) If anything, these screens would leave users with the impression that they have not agreed to arbitrate. Accordingly, these screens cannot require Plaintiffs to arbitrate.

EarnIn also claims Stow and Lofton are bound by the November 2023 ToS because they: (1) received an email on November 21, 2023, which linked to the November 2023 ToS; and (2) continued using EarnIn's app after receiving the email. (ECF 17, pp. 28–29.)

14

The email is insufficient to prove assent because there is no evidence to prove Stow or Lofton read the email. EarnIn's own unpublished case-in-chief foreshadows this precise concern. *See Sadlock v. Walt Disney Co.*, No. 22-cv-09155, 2023 U.S. Dist. LEXIS 132295, at *34–36 (N.D. Cal. July 31, 2023) (cited at ECF 17, p. 28) (flagging "potential problems with a defendant relying on notice via email," such as whether there was "evidence that the plaintiff actually saw the email," and concluding a defendant who "rel[ied] solely on the sending of an email and continued service without requiring the recipient to take some demonstrable affirmative step or proof of receipt and review . . . risks a finding of no constructive notice and assent").

Moreover, unlike the cases EarnIn cites, Stow and Lofton both testify under penalty of perjury that they were made aware of the November 2023 email and terms after EarnIn filed its motion to compel. *See* Stow Decl.; Lofton Decl. There is no evidence to dispute this testimony. Accordingly, there is no evidence to prove EarnIn's email bound Stow or Lofton to the November 2023 ToS. *See Tempest v. Safeway, Inc.*, No. 24-cv-06553, 2025 U.S. Dist. LEXIS 135949, at *12–20 (N.D. Cal. July 16, 2025); *Ireland-Gordy v. Tile, Inc.*, 760 F. Supp. 3d 946, 954–56 (N.D. Cal. 2024); *Sifuentes v. Dropbox, Inc.*, No. 20-cv-07908, 2022 U.S. Dist. LEXIS 125273, at *9–12 (N.D. Cal. June 29, 2022).[4]

---

[4] EarnIn cites cases that stand for the proposition that a plaintiff can assent to updated terms through continued use of an app based on "initial consent" to terms with a provision that states continued use will bind the plaintiff to updated terms. (ECF 17, pp. 28–29.) These cases do not move the needle as Stow and Lofton never gave "initial consent" to any terms when they signed up, as explained above in Sections I.A. and I.B.

15

Indeed, as a matter of contract formation, it would be a strange result to allow notice and assent defects at the account creation stage—screens every user must encounter—to be cured across the board with follow-up emails that, by contrast, no user is required to review or even acknowledge. Since there is no evidence that Stow or Lofton reviewed or even acknowledged EarnIn's November 2023 email, that unilateral communication cannot bind Stow or Lofton to the November 2023 ToS.

## II.    Lofton's April 2023 ToS Is Unconscionable.

If the Court finds Lofton agreed to the April 2023 ToS, the Court should invalidate the arbitration clause on unconscionability grounds, which require a showing of procedural and substantive unconscionability under California. *Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 681 (9th Cir. 2024).[5] The unconscionability arises from the April 2023 ToS's prohibition on "Collective Arbitration," which prevents attorneys from representing more than one claimant with similar claims simultaneously. (*See* ECF 18-2 at 27.)

Procedural unconscionability is readily met here, as the April 2023 ToS is a contract of adhesion Lofton could not negotiate. *See Heckman*, 120 F.4th at 681 ("Some California courts have held that in itself a finding of a contract of adhesion is essentially a finding of procedural unconscionability." (cleaned up)) (collecting cases). The "oppression and surprise" elements confirm procedural unconscionability is established, as the April 2023

---

[5] Plaintiffs cite California law because EarnIn relies on it in its motion. North Carolina law applies a substantially similar framework. *See Lail v. Tuck*, 908 S.E.2d 842, 847 (N.C. App. 2024). Accordingly, the choice of law is inconsequential on this point, as it is on issues of contract formation.

16

ToS gives EarnIn a unilateral right to amend the ToS "at any time" simply "by posting the revised agreement on the Site" where changes are "effective upon posting." (ECF 18-2 at 4); *see Heckman*, 120 F.4th at 682 (finding oppression in substantively identical clause). And if more is needed, procedural unconscionability is further established by the disparity in bargaining power between EarnIn and its small-dollar-loan customers, and the fact that EarnIn buried its Collective Arbitration prohibition in fine print legalese, on the 27th page and sixth subsection of its arbitration provision, which was hidden behind an inconspicuous hyperlink. (ECF 18-2 at 27); *Heckman*, 120 F.4th at 682 (disparity in bargaining power supports finding of "oppression"; and "surprise" can be shown where terms are "hidden" (internal marks omitted)).

Substantive unconscionability is also present, which requires showing the terms are "overly harsh or one-sided." *Id.* at 683. Here, the arbitration clause is overly harsh because it effectively restricts Lofton's freedom to select her counsel. *See Adams v. Aerojet-Gen. Corp.*, 86 Cal. App. 4th 1324, 1337 (2001) (interpreting California ethics rule narrowly to avoid "restrict[ing] both the client's right to chosen counsel and the attorney's freedom of association"); *see also, e.g.*, Cal. R.C.P. 5.6. Indeed, the clause prevents Lofton from proceeding should this case be compelled to arbitration unless she obtains a new attorney. Such narrow restrictions that operate to disqualify claims based on the identity of counsel have an unconscionable "chilling effect" on the ability of claimants to "vindicate their rights." *See MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1041 (N.D. Cal. 2022). These harsh terms are compounded by their one-sided nature. Indeed, the Collective Action

17

prohibition applies only to "Claims against EarnIn," so EarnIn can enjoy the consistency and expertise derived from retaining the same counsel to litigate similar proceedings. That Lofton cannot do so, and must either choose not to pursue her claims or obtain inexperienced counsel, further demonstrates that the Collective Action provision is unconscionable. *See Heckman*, 120 F.4th at 686 (provision authorizing appeal of arbitrator award of injunctive relief asymmetrically favored defendants because "only plaintiffs are likely to pursue injunctive relief"); *MacClelland*, 609 F. Supp. 3d at 1040; *Pandolfi v. Aviagames, Inc.*, No. 23-cv-05971, 2024 U.S. Dist. LEXIS 159007, at *19 (N.D. Cal. Sept. 4, 2024).

The April 2023 ToS's Collective Action prohibition evinces harsh procedural and substantive unconscionability, which means it should be invalidated. And because that clause is not severable, the entire arbitration clause should be invalidated, too. (ECF 18-2 at 31 (invalidation of any portion of "No Class Actions" subsection, which includes the Collective Action prohibition, invalidates the entire arbitration clause).)

## III. The Arbitration Agreements Should Not Be Enforced Because Plaintiffs Did Not Knowingly Waive Their Jury Trial Rights.

Federal law historically favors jury trials. *See Simler v. Conner*, 372 U.S. 221, 222 (1963) (collecting cases). Given that, federal courts "indulge every reasonable presumption against waiver." *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937). To overcome this presumption, the proponent of a waiver must prove the waiver was knowing and intelligent. *See Leasing Serv. Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir. 1986); *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 675 (4th Cir. 2016) ("[S]o long as [jury trial] waivers pass the

18

applicable knowing and voluntary standard, they will typically be enforced.").[6] A waiver is knowing and intelligent if a contract clearly states that a party is waiving their rights, and the party takes some action (like signing the contract) that places them on a "duty to read." *See Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 306 (4th Cir. 2016). Importantly, "the duty-to-read principle must take account of the realities of the digital realm. While a person signing a physical contract 'will rarely be unaware of that fact,' a person using the internet may not realize that she is agreeing to a contract at all,' or that contract terms appear on submerged screens or through hyperlinks." *Marshall*, 112 F.4th at 220.

Courts have applied similar knowing and voluntary principles in refusing to enforce jury trial waivers in online contracts under state law. *See Rigano v. Uber Tech., Inc.*, 218 N.Y.S.3d 799, 2024 N.Y. Misc. LEXIS 8354, at *30–31 (N.Y. Sup. Ct. Oct. 15, 2024) ("Taking a realistic and global view, petitioner should not be compelled to arbitrate where it was difficult to appreciate the consequences of waiving a fundamental right with a few clicks on an app."); *Wollen v. Gulf Stream Restoration & Cleaning, LLC*, 259 A.3d 867, 878–79 (N.J. Sup. Ct. 2021) (analyzing screen that provided more explicit notification of an arbitration contract than the screens in this case, and finding "knowledge and assent absent," even though plaintiff clicked a "View Matching Pros" button on a screen with the following notice directly below the button: "By submitting this request you are agreeing to our Terms & Conditions").

---

[6] "The right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity cases as well as other actions." *Simler*, 372 U.S. at 222.

Here, EarnIn's evidence likewise fails to overcome the presumption against waiver. It is undisputed that Plaintiffs did not sign any of EarnIn's terms, and there is no evidence to prove Plaintiffs read or even saw the terms. Accordingly, there must be some other action that charged Plaintiffs with a duty to read EarnIn's terms, such that Plaintiffs knowingly waived their right to a jury trial. But EarnIn points to no such action. Although Plaintiffs clicked buttons during the sign-up process for EarnIn's app, EarnIn failed to explicitly advise that these actions would bind Plaintiffs to any terms, as explained above. *See* Section II, *supra.* And although Plaintiffs obtained advances and EarnIn sent them emails after they created accounts, Plaintiffs were never explicitly informed that those advances or emails would bind them to any contract that would waive their right to a jury trial. *See id.* Since Plaintiffs took no action to unambiguously acknowledge EarnIn's terms, the Court must presume they did not knowingly waive their right to a jury trial. The Court should thus decline to compel arbitration.

## IV. Plaintiffs' Formation and Unconscionability Challenges Are for the Court to Resolve Irrespective of Any Delegation Clause.

Given the nature of Plaintiffs' challenges, EarnIn cannot bypass this Court's review through its delegation clauses. Plaintiffs' contract formation challenge falls squarely within the settled rule that "where the dispute at issue concerns contract formation, the dispute is generally for the courts to decide." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 296 (2010); *Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169, 175 (4th Cir. 2025) ("It would put the cart before the horse to enforce any provision of the agreement, including the delegation clause, before deciding whether the agreement itself was ever formed."). As

20

to unconscionability, that too is a question for the Court, because the same issues that render the arbitration clause unconscionable infect any attempted delegation. *See, e.g.*, *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 337 (4th Cir. 2020) ("[I]f the claimant specifically attacks the validity of the delegation clause itself, a court may consider the clause's enforceability"; plaintiffs may challenge a delegation clause by arguing that broader unconscionability issues, "*as applied* to [the] delegation provision render[] *that provision* unconscionable."); *see also MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226–27 (3d Cir. 2018) ("In specifically challenging a delegation clause, a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions."). For example, if the Court upheld EarnIn's attempted delegation and compelled arbitration, the Collective Arbitration prohibition would prevent Lofton from raising even the threshold issue of unconscionability before an arbitrator—because Lofton would be unable to bring a claim concurrently with other claimants represented by counsel. This Court should thus decide both challenges regardless of the delegation clause.

## V.     The Class Action Waiver Should Not Be Enforced.

For the reasons explained in Sections II and III, *supra*, EarnIn cannot show that it formed an enforceable contract with Plaintiffs as to the September 2021, April 2023, and November 2023 ToS. As a result, the class action waiver contained in those contracts is not enforceable against any Plaintiff, as they never agreed to those terms.

## CONCLUSION

The Court should deny EarnIn's Motion to Compel Arbitration in full.

21

Respectfully submitted,

Dated: September 8, 2025    By:    */s/ Randolph T. Chen*
Randolph T. Chen*
Jason S. Rathod*
**Migliaccio & Rathod LLP**
412 H St NE
Washington, DC 20002
Tel: (202) 470-3520
jrathod@classlawdc.com
rchen@classlawdc.com

*/s/ Troy D. Shelton*
Troy D. Shelton
**Dowling PLLC**
3801 Lake Boone Trail, Suite 260
Raleigh, NC 27607
Tel: (919) 529-3351
tshelton@dowlingfirm.com

*/s/ Kevin Abramowicz*
Kevin Abramowicz*
**East End Trial Group LLC**
6901 Lynn Way, Suite 503
Pittsburgh, PA 15208
Tel: (412) 223-5740
Fax: (412) 626-7101
kabramowicz@eastendtrialgroup.com

*Attorneys for Plaintiffs*

* *Admitted by Special Appearance*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3**

I hereby certify that this brief contains 5,605 words—as indicated by the word count feature of the word processing system used to the prepare this brief—which complies with the word count limitation set forth in M.D.N.C. L.R. 7.3(d)(1).

_/s/ Kevin Abramowicz_
Kevin Abramowicz