IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:25-CV-00391-CCE-LPA

| | |
|---|---|
| JOSHUA STOW, SHARONE BUNN, AND TIARA LOFTON, individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br> v.<br><br>ACTIVEHOURS, INC., d/b/a EARNIN,<br><br>       Defendant. | **ORAL ARGUMENT REQUESTED** |

**REPLY IN SUPPORT OF DEFENDANT EARNIN'S
MOTION TO COMPEL ARBITRATION**

# INTRODUCTION

Plaintiffs' claims belong in arbitration, not court, because each of them agreed to arbitrate their disputes with EarnIn pursuant to EarnIn's ToS. EarnIn's sign-up flow resembles countless others that courts have held to create valid arbitration agreements: The flow gave Plaintiffs conspicuous notice of EarnIn's ToS and unambiguously explained to Plaintiffs that signing up and using the app would manifest assent to those terms (and any changes thereto). Plaintiffs then did precisely that. Plaintiffs nonetheless read the Ninth Circuit's decision in *Chabolla v. ClassPass Inc.*, 129 F.4th 1147 (9th Cir. 2025), to upend the settled legal landscape governing online arbitration agreements. But in fact, the website in *Chabolla* was meaningfully distinct from EarnIn's app and website here. Indeed, *Chabolla* expressly distinguished cases involving apps and websites much like EarnIn's. The court should thus enforce Plaintiffs' agreement with EarnIn and compel arbitration.

# ARGUMENT

## I. PLAINTIFFS AGREED TO EARNIN'S TERMS OF SERVICE

Plaintiffs formed a valid contract with EarnIn: In exchange for using EarnIn's service, Plaintiffs agreed to EarnIn's ToS—including the arbitration provision and class action waiver. Bunn and Stow agreed to the 2021 ToS by signing up through the EarnIn app in 2022. Blackwell Decl. Ex. A. Lofton agreed to the April 2023 ToS by signing up

on EarnIn's website using her phone in 2023. *Id.* Ex. B. And Stow and Lofton independently assented to EarnIn's November 2023 ToS when they continued to use EarnIn after receiving an email advising them of the updated ToS. *Id.* Ex. C.

In each case, Plaintiffs formed a contract with EarnIn because they "(1) had reasonable notice of an offer to enter into the contract [with Earnin] and (2) manifested assent to [that offer]." *Dhruva v. CuriosityStream, Inc.*, 131 F.4th 146, 151 (4th Cir. 2025) (applying California law) (citation omitted). Plaintiffs do not dispute that Bunn and Stow had sufficiently conspicuous notice of the ToS or that Lofton manifested assent. *See* Plaintiff's Opp'n, ECF No. 22 ("Opp'n"). Instead, Plaintiffs contend that Bunn and Stow did not manifest assent, *id.* at 9–14; Lofton lacked sufficient notice, *id.* at 3-8; and the email to Stow and Lofton did not create a contract, *id.* at 14-16. Those contentions lack merit.

A. **Bunn and Stow Manifested Assent by "Signing Up"**

Bunn and Stow agreed to the ToS when they signed up for EarnIn's services in 2022. EarnIn gave clear notice on the first page of its sign-up flow that "[b]y signing up, you agree to the Terms" and provided a blue contrasting font hyperlink to the ToS. Altieri Decl. Ex. A; *see* Mem. of Law in Supp. of Def's Mot. to Compel Arb. at 7 (reproducing image). After seeing that notice on the first page, Bunn and Stow proceeded to sign up by inputting their information, clicking through each page, and clicking "Create Account." Altieri Decl. Ex. A. By signing up via a click agreement after receiving clear notice that

"by signing up, [they] agree to the [ToS]," Bunn and Stow manifested their assent to those terms.

Plaintiffs' contrary argument misconstrues *Chabolla*. There, the court considered a website with "ambiguous" instructions on how to manifest assent. *Chabolla*, 129 F.4th at 1158; *see* Opp'n 4 (reproducing image from *Chabolla*). The website told users that buying fitness classes involved "no commitment," but also that "[b]y signing up you agree to our Terms." *Chabolla*, 129 F.4th at 1159. And the users clicked a "Redeem Now" button, which in context might "reasonably [leave] the impression that to 'Redeem' means to 'Redeem a gift card,' rather than purchase a membership." *Id.* The court thus concluded that the website "did not indicate to the user what action would constitute assent." *Id.* (citation omitted).

Unlike the website in *Chabolla*, EarnIn's sign-up flow is clear. Because Bunn and Stow received notice that by "signing up, [they] agree[d] to the Terms"—without any additional conflicting messages like in *Chabolla*—they understood that they were signing up. Altieri Decl. Ex. A. They then completed the registration and clicked the "Create Account" button. *Id.* In the online world, "signing up" and "creating an account" are synonymous.[1] And where, as here, the term used to provide notice is synonymous with the

---

[1] *See, e.g.*, U.S. Citizenship and Immigration Services, "How to Create a USCIS Online Account," https://www.uscis.gov/file-online/how-to-create-a-uscis-online-account, accessed September 2025 ("[c]reate a UCIS [a]ccount" by going to the "Sign Up page" and clicking "Sign Up"); X [formerly Twitter] Help Center, "Signing up with X," https://help.x.com/en/using-x/create-x-account, accessed September 2025 ("sign up for an X account" using the "[c]reate your account pop up").

term used to indicate assent, a contract is formed. *See, e.g.*, *Rainey v. A Place for Rover, Inc.*, 2022 WL 16942849, at *1 (C.D. Cal. July 18, 2022) (contract formed where notice read "By signing in or signing up" and button read "Continue with Google"). By contrast, in *Chabolla*, the two terms—"Redeem Now" and "sign up"—meant different things, so "what the user manifests" by clicking "Redeem Now" was "ambiguous at best." *Chabolla*, 129 F.4th at 1159.

Contrary to Plaintiffs' suggestion, *Chabolla* does not hold that notice and assent must be completed on a single page. Opp'n 12-13. In fact, *Chabolla* considered whether "viewed as a whole" "a reasonably prudent internet user manifestly assents to the [Terms] by working her way through [the] *multi-page* website." 129 F.4th at 1160 (emphasis added). Likewise, *Godun v. JustAnswer LLC*, 135 F.4th 699 (9th Cir. 2025), confirms that "any suggestion that hard-and-fast rules constrain this inquiry results from over-reading or misreading [Ninth Circuit] precedent." *Id.* at 710. And the Fourth Circuit's decision in *Dhruva*—binding on this Court—specifically found that linked terms of use on one webpage properly notified users how to "signify assent" on a *separate* "covered website." 131 F.4th at 154.

Any doubt that Bunn and Stow manifested assent is resolved by the ToS themselves. The first section of the 2021 ToS states that "BY ACCESSING OR USING THE SITE OR THE SERVICES YOU AGREE TO BE BOUND BY THE TERMS OF SERVICE." Blackwell Decl. Ex. A, p. 1. As *Dhruva* held, "because [Plaintiffs] were, at minimum, on notice of the terms of use, they cannot claim ignorance about what actions those terms said

- 4 -

would manifest assent." 131 F.4th at 154. Thus, "[b]ecause [EarnIn] expressly advised [Plaintiffs] that [accessing or using the site or services] signifies that they agree," their repeated use of EarnIn "objectively and unambiguously manifested assent to those terms." *Id.* at 155 (internal quotation marks omitted).

B.   **Lofton Had Notice of The ToS**

Plaintiffs err in contending that Lofton did not receive notice of the EarnIn ToS when she signed up. Opp'n 3-7. Lofton signed up in 2023 using a single page on the app. *See id.* at 5 (reproducing image). That page shares the features that courts have routinely found sufficient to provide notice. As in *Dhruva*, the hyperlinked ToS appear on an "uncluttered background, close to the . . . button that the customer has to click," and "[n]othing about the website design or layout obscures the conspicuous location of the hyperlink." 131 F.4th at 152. And as in *Keebaugh*, the notice is "[d]irectly beneath the operative . . . button," while the hyperlink "uses customary design elements denoting the existence of a hyperlink"—namely, underlining. 100 F.4th 1021 (quotation marks omitted). Plaintiffs again rely on *Chabolla* to argue that Lofton's screen suffers from defects relating to (1) distance, (2) font, and (3) clutter. That argument lacks merit.

*First,* EarnIn's notice of the ToS appears directly below the button the user must click. By contrast, in *Chabolla*, "the notice of additional terms" was "found below the 'Sign up with Facebook' option," which was a separate action item "on the periphery of where a user . . . would be looking." 129 F.4th at 1157. In fact, *Chabolla* distinguishes

- 5 -

cases like this one, where "notice of the terms and conditions [is] directly above *or below* the relevant action item." *Id.* (emphasis added). Plaintiffs speculate that the notice here may not have been visible without "scroll[ing] down the webpage." Opp'n 7. But the same argument could be made in any case where the notice is "below the action button"— and yet the Ninth Circuit has upheld agreements in that circumstance. *Oberstein v. Live Nation Ent.*, 60 F.4th 505, 516 (9th Cir. 2023). Indeed, it is equally "plausible" that the image of two people on EarnIn's page would not have been visible without scrolling down. Opp'n 7. If so, that would eliminate the basis of Plaintiffs' contention that purported "clutter" diverted attention from the ToS. *Id.*

*Second,* EarnIn's notice appears in a dark purple font contrasted against a white background. That presentation diverges from the one in *Chabolla*, which featured "a small gray font against a white background." 129 F.4th at 1156. The Ninth Circuit has found sufficient notice where, as here, the text appeared in a contrasting font color. *See Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024).

*Third,* EarnIn's notice is centered on a plain white background, with nothing else competing for the user's attention. Indeed, the only image appears well below the notice. In contrast, the screen in *Chabolla* was dominated by images of people exercising, while the notice appeared at the bottom of the action box in the corner of the screen. 129 F.4th at 1157. Again, *Chabolla* distinguishes cases like this one, in which "screens were less crowded." *Id.*

- 6 -

Lofton's "continuing relationship" with EarnIn also put her "on notice for a link to the terms of that continuing relationship." *Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 925 (N.D. Cal. 2024). That "context of the transaction" "inform[s] whether a website provides reasonably conspicuous notice." *Chabolla*, 129 F.4th at 1155. Here, EarnIn users download an app that allows them to directly receive portions of their earned but unpaid wages. Compl. ¶ 16. Any "reasonably prudent internet user" would expect such a relationship to "be governed by some terms." *Keebaugh*, 100 F.4th at 1020. By contrast, in *Chabolla*, "the vague nature of the business"—discount fitness classes—would not have "alerted Chabolla to look for additional terms." 129 F.4th at 1156.

Citing *Berman v. Freedom Tin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022), and *Sellers v. JustAnswer, LLC*, 73 Cal. App. 5th 444 (2021), Plaintiffs argue that a hyperlink in the same color as the surrounding text is insufficiently conspicuous. Opp'n at 5. But neither of those cases involved the type of "continuing, forward-looking relationship" at issue here. *Sellers*, 73 Cal. App. 5th at 471. By creating an account, EarnIn users gain "ongoing access" to EarnIn's services, not just a "one-and-done interaction." *Keebaugh*, 100 F.4th at 1020. In this respect, they are like users of the video game at issue in *Keebaugh*, where notice based on a similarly-colored hyperlinked was sufficient because "players can continue to play for a long time." *Id.* Indeed, *Chabolla* distinguishes *Keebaugh* precisely because it involved a forward-looking relationship much like the one here. 129 F.4th at 1156. And other courts have reached the same result as *Keebaugh* on similar facts. *See, e.g.*, *Lincoln v. MX Techs., Inc.*, 2024 WL 3274831, at *2-3 (E.D. Cal.

July 2, 2024) (sufficient notice provided by an underlined hyperlink in context of a "forward looking relationship"). Thus, taken as a whole, the distance, font, and lack of clutter in EarnIn's visuals, as well as the nature of the transaction, more closely resemble the cases *Chabolla* distinguishes than *Chabolla* itself.[2]

### C. Stow and Lofton Also Assented to EarnIn's Terms By Using EarnIn After Receiving Email Notice

Stow and Lofton formed a second contract with EarnIn by continuing to use it after receiving new ToS by email. On November 21, 2023, EarnIn emailed Stow and Lofton updated ToS. Flick Decl., Ex. A-D. The subject line read "EarnIn Terms of Service & Cash Out Agreement," and the body of the email explained the new terms and provided a link. *Id.* Ex. A.

This email provides sufficient notice because its language "is reasonably conspicuous," "the header clearly states that the email included updates to the [ToS]," and "the [ToS] hyperlink is in blue font and stands out from the remaining text." *Ghazizadeh*, 737 F. Supp. 3d at 932. In turn, the terms inform the users how to manifest assent—specifically, they state that "[b]y accessing or using the Sites or the Services, you acknowledge that you have read, understand, and agree to be bound by this Agreement." Blackwell Decl. Ex. C. Accordingly, Stow and Lofton formed a contract with EarnIn by

---

[2] Plaintiffs also argue that EarnIn's notice is insufficient because it might be confused with a footnote. But footnotes (like this one) are frequently read—particularly when a reasonable user expects "a link to the terms." *Ghazizadeh*, 737 F. Supp. 3d at 925. Regardless, EarnIn's notice is not in a footnote—it is *above* the footnote.

continuing to use EarnIn after receiving this email. Artieri Decl. ¶¶ 20, 22. Courts applying California law consistently find email notification of terms and conditions followed by continued use sufficient for contract formation. *See, e.g.*, *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016).

Plaintiffs contend that the email here is "insufficient" because "there is no evidence to prove Stow or Lofton read the email." Opp'n at 15. But courts have found email notice sufficient without identifying evidence that the plaintiffs had read the email. *West*, 2018 WL 5848903 at *5; *Facebook Biometric*, 185 F. Supp. 3d at 1167. That is because "inquiry notice"—not actual notice—is the relevant test. *Sandlock v. Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023); *see Berman*, 30 F.4th at 856. While it is true that in *West* and *Facebook Biometric* the plaintiffs had already agreed to arbitrate before receiving the email, that "distinction is not material." *Sandlock*, 2023 WL 4869245, at *12. So long as "[t]here was undisputedly an agreement *of some kind*" between the plaintiff and the relevant company—"even if there was no agreement" to "the arbitration provision" specifically—a company can "modify that existing agreement . . . by adding" terms through proper email notice. *Id.* Here, regardless of whether Stow and Lofton previously agreed to arbitrate, they at least agreed to use EarnIn's services—so EarnIn validly modified that agreement through its November 2023 email.

Plaintiffs further emphasize in Stow and Lofton's declarations that they became aware of the November 2023 email and ToS only "after EarnIn filed its motion to compel."

Opp'n 15. But those declarations do not alter the legal analysis—which (again) turns on *inquiry* notice, not actual notice. It is unsurprising that a plaintiff would forget about an email she received two years ago. Accepting a plaintiff's self-serving declaration that she "do[es] not remember" an email of that vintage would effectively nullify the inquiry-notice rule in the email context. Stow Decl.; Lofton Decl.

## II. PLAINTIFFS FAIL TO SHOW UNCONSCIONABILITY

Plaintiffs err in arguing that the arbitration clause in the April 2023 ToS—applicable only to Lofton—is unconscionable.[3] Opp'n 16. Under California law, procedural and substantive unconscionability "must both be present in order for a court to . . . refuse to enforce a contract or clause under the doctrine of unconscionability." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Plaintiffs falter on the first step, because they cannot show procedural unconscionability.

Courts applying California law have "consistently found that an arbitration agreement is not [unconscionable] if there is an opportunity to opt out of it." *Baghdasarian v. Macy's Inc.*, 2025 WL 999082, at *2 (9th Cir. Apr. 3, 2025) (quoting *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016)); *accord Carter v. Rent-A-Ctr., Inc.*, 718 F. App'x 502, 505 (9th Cir. 2017); *Cir. City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199

---

[3] That clause applies only to Lofton and only if this court finds that the terms of the April 2023 agreement were not modified by email notice and continued use in November 2023.

(9th Cir. 2002). Here, the relevant ToS contain a clause giving users 30 days to opt-out of the arbitration clause without penalty. Blackwell Decl. Ex. B, p. 24. The ToS announce the arbitration clause in bold capital letters on the first page and emphasize the opt-out provision with bold font in the arbitration section. *Id.* at 1, 24. "Because [Lofton] fails to satisfy even the procedural unconscionability prong," this Court "need not reach h[er] arguments that the agreement is substantively unconscionable." *Cir. City Stores*, 283 F.3d at 1200.

## III. PLAINTIFFS' REMAINING ARGUMENTS FAIL

Plaintiffs' remaining arguments lack independent force and therefore fail for the same reasons as their earlier arguments. Their challenge to the class-action waiver concededly depends on the success of their challenge to the arbitration agreement. Opp'n 21. Likewise, Plaintiffs' challenge to the jury waiver cannot survive if the arbitration clause is binding. Plaintiffs' own caselaw recognizes as much. Opp'n 18-20. In *Sydnor v. Conseco Financial Servicing Corp.*, the court explained that waiver of "the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate," holding that "the fact that the appellees waived their right to a jury trial [does not] require the court to evaluate the agreement to arbitrate under a more demanding standard." 252 F.3d 302, 307 (4th Cir. 2001). To hold otherwise would run counter to the Federal Arbitration Act ("FAA"), which forbids states from "singling out [arbitration agreements] for disfavored treatment." *Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246,

- 11 -

Case 1:25-cv-00391-CCE-LPA    Document 23    Filed 09/22/25    Page 12 of 15

252 (2017) (invalidating Kentucky Supreme Court's clear-statement rule for waiver of jury rights under the FAA).[4] Because the ToS are binding, it follows that Plaintiffs waived their right to a class action and a jury.

## CONCLUSION

For these reasons, Defendant EarnIn respectfully requests that the Court grant its motion to compel arbitration.

This the 22nd day of September, 2025.

/s/ Stephen V. Carey
Stephen V. Carey (NC Bar No. 52791)
Cristina C. Stam (NC Bar No. 51009)
Aislinn R. Klos (NC Bar No. 58309)
PARKER POE ADAMS & BERNSTEIN LLP
301 Fayetteville Street, Suite 1400
Raleigh, NC 27601
Tel.: (919) 828-0564 | Fax: (919) 864-4564
stevecarey@parkerpoe.com
cristinastam@parkerpoe.com
aislinnklos@parkerpoe.com

Michael N. Sheetz (Special Appearance)
Allison C. Sherwood (Special Appearance)
COOLEY LLP
500 Boylston Street, 14th Floor
Boston, MA 02116-3736
(617) 937-2300 | Fax: (617) 937-2400
msheetz@cooley.com
asherwood@cooley.com

*Attorneys for Defendant*
*ACTIVEHOURS, INC. d/b/a EARNIN*

---

[4] Plaintiffs' cited out-of-state decisions are not binding on this Court. *See* Opp'n 19. In any event, those decisions simply hold only that the parties at issue did not agree to arbitrate; they do not subject arbitration provisions to heightened scrutiny—a rule that the FAA would plainly preempt.

## CERTIFICATION OF COMPLIANCE

Pursuant to Local Rule 7.3(d)(1), the undersigned hereby certifies that this brief contains no more than 3,125 words, as calculated by the word count feature of Microsoft Word, Office 365 ProPlus.

*/s/ Stephen V. Carey*
Stephen V. Carey

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing document was electronically filed with the Clerk of the Court by using the CM/ECF System which will automatically send notice to all counsel of record

This the 22nd day of September, 2025.

*/s/ Stephen V. Carey*
Stephen V. Carey
